### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DENNIS R. METTER,<br><br>        Plaintiff,<br><br>v.<br><br>WACHOVIA SECURITIES, LLC,<br><br>        Defendant. | Federal Case No. 1:08-cv-2239<br><br>State Case No. 08CH10261<br><br>**MEMORANDUM OF LAW IN SUPPORT OF WACHOVIA SECURITIES, LLC'S OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD AND CROSS-MOTION TO CONFIRM ARBITRATION AWARD**<br><br>**Before Judge John W. Darrah** |

### INTRODUCTION

This Honorable Court should deny Metter's Motion to Vacate Arbitration Award and instead, allow Wachovia Securities LLC's ("Wachovia") Motion to Confirm Arbitration Award. As this Honorable Court is aware, both State and Federal Courts in Illinois consistently uphold and confirm arbitration awards. In the face of this well-settled area of law, Metter fails to articulate any valid reason for vacating this Arbitration award and can not overcome the extraordinary deference that Federal Courts extend to arbitrator's decisions.

Metter's motion is based on multiple misrepresentations of both fact and law. For example, Metter's argument relating to an out of state attorney's ability to represent a party in an arbitration is completely at odds with 705 ILCS 205/1, (the "Illinois Attorney Act"). Contrary to Metter's assertions, the Illinois Attorney Act specifically permits non-licensed attorneys to represent clients in arbitration. Similarly, Metter argues that he was

1

not legally required to arbitrate this claim. However, as more fully set forth below, FINRA rules clearly require Metter's claim to be arbitrated.

In addition, Metter's motion ignores the fact that Metter signed two different documents agreeing to arbitrate this matter and that during the arbitration, Metter affirmed that he was satisfied with the composition of the panel and that he had received a fair hearing. Thus, not only is his motion based on misrepresentations, Metter has waived any right to argue that Arbitration was not the appropriate forum to hear his claim.

In short, Metter has not demonstrated any evidence of bias, nor fraud nor corruption, nor a manifest disregard of the law. Nowhere in Metter's motion does he cite a single fact that supports this Court vacating the award. Thus, Wachovia requests that this Court follow the clear public policy, embraced by both Illinois State and Federal courts, favoring the resolution of disputes through the arbitration process by denying Metter's Motion to Vacate and allowing Wachovia's Motion for Confirmation of Arbitration Award.

## UNDISPUTED FACTS

1. On February 10, 2006, Dennis Metter and Donald Metter (the "Metters") filed a Statement of Claim in Arbitration with NASD (now known as "FINRA" or the "Financial Industry Regulatory Authority") (FINRA Case No. 06-0700) alleging that that they had been constructively discharged from their employment as financial advisors at Wachovia.

2

2. The Statement of Claim asserted claims for constructive termination, Breach of the Metters' Employment Agreement, Unjust Enrichment, Fraud and Misrepresentation.

3. The Statement of Claim specifically alleged that Wachovia changed the commission structure of certain products and refused to allow Dennis Metter to continue to service a solicitation agreement from which he received an outside income stream. The Metters sought compensatory damages for lost commissions and other compensation.

4. Wachovia filed a Statement of Answer and Counterclaims against the Metters on June 13, 2006.

5. Wachovia denied all of the allegations in the Metters' Statement of Claim and also sought to recover the balances due on two promissory notes signed by the Metters' while they were employed at Wachovia.

6. The Metters responded to those Counterclaims on July 17, 2006. At no time did the Metters argue that any of the claims contained in the Statement of Claim or the Counterclaims should be removed to State or Federal court, or any forum other than FINRA arbitration.

7. All claims were arbitrated before a FINRA arbitration panel on December 11-14, 2007.

8. All parties were given a full and fair opportunity to examine and cross-examine all witnesses and to enter documentary evidence.

9. A decision was entered by the arbitration panel on December 20, 2007 (the "Award") (Attached hereto as "Exhibit A").

10. The panel denied all of the Metters' claims.

11. The panel further ruled in favor of Wachovia's Counterclaim and ordered Dennis Metter to pay Wachovia $248,574.15 in damages with interest at the rate of seven percent per annum pursuant to the terms of the promissory note.

12. The panel ordered Donald Metter to pay Wachovia $114,590.00 in damages with interest at the rate of seven percent per annum pursuant to his promissory note.

13. Donald Metter subsequently entered into a settlement with Wachovia in lieu of payment of the Award.

14. On March 19, 2008, Dennis Metter filed a Motion to Vacate Arbitration Award in the Circuit Court of Cook County, Illinois County Department, Chancery Division (Case No. 08 CH 1026T).

15. Wachovia filed a Petition for Removal with this Court on April 18, 2007. Wachovia seeks to confirm the Award and requests that this Court deny Dennis Metter's Motion to Vacate.


**ARGUMENT**

**A.**    **Metter Has Not Alleged Any Valid Reason To Vacate The Award And Therefore He Can Not Overcome The Extraordinary Deference That Federal Courts Extend To Arbitrator's Decisions.**

Courts are extremely reluctant to disturb the findings of an Arbitrator when parties to a contract have agreed to resolve disagreements through arbitration. S. David Stulberg, et al. v. Intermedics Orthopedics, Inc., et al., 997 F. Supp. 1060 (N. D. Ill. 1998), citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36-37 (1987). Judicial review of arbitral awards is grudgingly narrow. Donald Wilson v. Sterling Foster

4

& Co., Inc., et al., 1998 U.S. Dist. LEXIS 16913 at *6 (N. D. Ill. 1998) (Where the Court

held that Arbitrators did not exceed their powers by entering an award where the parties

had never agreed to arbitrate) (Attached hereto as "Exhibit B"), citing Eljer Mfg., Inc. v.

Kowin Dev. Corp., 14 F. 3d 1250, 1253 (7th Cir. 1994). This limited standard of review is

necessary to preserve arbitration's benefits of reduced delay and expense. Wilson, 1998

U.S. Dist. LEXIS at * 6.

      Under the Federal Arbitration Act, an arbitration award may be vacated:

    (1)    Where the award was procured by corruption, fraud, or undue means;

    (2)    Where there was evident partiality or corruption in the arbitrators, or either of them;

    (3)    Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

    (4)    Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made;

    (5)    Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators. (*See* 9 U.S.C. § 10(a).

In Metter's case, there is no evidence that any of the five factors set forth above

are applicable to the Arbitration process which resulted in Wachovia obtaining its Award.

      Another factor that may cause a court to vacate an Arbitration Award is if the

Court finds a manifest disregard for the law. However, the Seventh Circuit has

interpreted this language so narrowly that it is confined to cases in which arbitrators

actually direct the parties to violate the law. Vermilion Coal Company v. Black Beauty

Coal Company, 2008 U.S. Dist. LEXIS 19381 at *5 (C. D. Ill. 2008) (Attached hereto as

"Exhibit C"), citing Wise v. Wachovia Securities, LLC, 450 F. 3d 265, 267 (7th Cir.

2006). The Seventh Circuit has stated that judicial review of arbitration awards is tightly

limited and therefore perhaps should not even be called "review" at all. Vermilion Coal

Company, 2008 U.S. Dist. LEXIS at *5, citing Barabati v. Josephthal, Lyon & Ross, Inc.,

28 F. 3d 704, 706 (7th Cir. 1994). Once again, in Metter's case, there is no evidence that

the Arbitration panel manifestly disregarded the law

Thus, Metter's Motion to Vacate fails to articulate any valid reason for vacating

an arbitration award.  For example, Metter makes vague accusations of "partiality" but

fails to provide even one example that the FINRA panel was in any way biased. Rather

than articulating a valid reason to vacate the Award, Metter's motion essentially reiterates

factual arguments presented in the Arbitration. However, these are the same arguments

heard and rejected by the Panel.

**B.** **Metter's Motion is Based On Multiple Misrepresentations Has Waived Any Right To Argue That Arbitration Was Not The Appropriate Forum To Hear His Claim**

Metter argues that the Award should be vacated because "employment related

disputes between FINRA members and their registered representatives are not related to

the members' business and thus are nonarbitrable" and that he was "led by mistake to

believe that arbitration of his employment dispute was mandatory." *See* Motion to Vacate

Arbitration Award at ¶ 33-34. However, neither of these arguments are advanced in

good-faith.

### 1. FINRA Rules Require Metter's Claim to Be Arbitrated

FINRA Rule 10201 requires arbitration of all claims arising out of the

employment of an Associated Person against a Member. (See "Exhibit D"). The only

exception to this rule is for assertion of statutory discrimination claims. Clearly, Metter

has not asserted a statutory discrimination claim. Therefore, his argument that his claims are exempt from the Rule 10201, and that arbitration of employment related disputes is not mandatory, is blatantly false.

### 2. Metter's Argument That He Was "Led By Mistake" is Without Merit

Metter has offered absolutely no evidence of mistake that supports his claim that he was "mistaken." In fact, at the time Metter filed his case with FINRA Dispute Resolution, he was represented by counsel. He simply cannot argue at this juncture that his choice of forum was improper simply because his claims were denied by the arbitration panel. *See* National Wrecking Co. v. International Bhd. of Teamsters, 990 F. 2d 957, 960 (7th Cir. 1993) (noting that arbitrators do not serve as junior varsity trial courts).

### 3. Metter Signed Two Different Documents Agreeing To Arbitrate This Matter.

When Metter registered with FINRA, he signed a Form U-4 stating that he agreed to arbitrate any dispute, claim or controversy that arose between him and his firm, a customer, or any other person. (See "Exhibit E"). This is a binding contract that Metter cannot possibly assert is void. In addition, at the time Metter filed his Statement of Claim with FINRA, Metter executed the requisite Uniform Submission Agreement. (See "Exhibit F"). This document unambiguously states that the parties willingly submit the matter in controversy to arbitration and further agree to abide by any award(s) rendered. Metter has offered absolutely no evidence to rebut the indisputable fact that he signed this document.

Illinois courts broadly interpret written contracts and have found that all parties are bound to arbitrate matters contemplated by the terms of their written agreements. *See* Clarence B. Dickenson v. Heinhold Securities, Inc., 661 F. 2d 638, 643 (7th Cir. 1981) (it is axiomatic that the parties should arbitrate all matters not explicitly excluded and that reasonably fit within the language used), citing United Textile Workers of America v. Newberry Mills, Inc., 315 F. 2d 217, 219 (4th Cir. 1963), cert. denied, 375 U.S. 818 (1963). This conclusion follows from the established federal policy that when construing arbitration agreements, every doubt is to be resolved in favor of arbitration. Dickenson, 661 F. 2d at 643.

### 4. During The Arbitration Metter Affirmed That He Was Satisfied With The Composition Of The Panel And That He Had Received A Fair Hearing.

At the outset of the Arbitration, through counsel, Metter affirmed that he was satisfied with the composition of the panel. When the Panel Chairman asked "Do the parties accept the composition of the Panel?" counsel for Claimant (Metter) stated "The Claimants do." (See "Exhibit G" at p. 3) In addition, following the FINRA arbitration hearing, all parties were asked whether they were provided a full and fair opportunity to be heard. Counsel for the Metters stated under oath that the Metters had been provided such an opportunity. (See "Exhibit G").[1]

### C.    Illinois case-law specifically permits out-of-state attorneys to participate in arbitrations in Illinois

Contrary to Metter's assertions, Illinois case-law specifically permits out-of-state attorneys to participate in arbitrations in Illinois. See Colmar Ltd. V. Freemantlemedia

---

[1] Exhibit G contains a certified copy of the transcript from the first day of the Arbitration, when counsel accepted the composition of the Arbitration Panel. As of the date this Motion was written, Wachovia's counsel was awaiting the certified transcript from the last day of the hearing. Upon receipt of the remaining certified transcript testimony, Wachovia shall supplement this Motion with an additional exhibit.

North America, Inc., 344 Ill. App. 3d 977 (2003). In Colmar, plaintiff argued that the arbitration award was void because defendant was represented by an attorney not licensed in Illinois in violation of the Attorney Act. Id. at 983. The Court held that based on the "modern trend in the jurisprudence of multijurisdictional practice," that the Attorney Act should not be applied in the situation where the non-licensed attorney represented defendant solely in arbitration. Id. at 984.

Thus, Metter's argument that the Award is void because the attorneys who represented Wachovia at the Arbitration were not licensed to practice law in Illinois, completely ignores the well-settled law in this area. In addition, Metter never raised this issue during the arbitration proceedings and therefore even if this argument was supported by law (which it is not) Metter has waived this argument.

**D. This Court Should Allow Wachovia's Motion To Confirm Arbitration Award**

Wachovia respectfully requests that this Court grant its Motion to Confirm the Arbitration Award issued by the FINRA arbitration panel on December 20, 2007.

Under the Federal Arbitration Act, a district court must grant a timely motion to confirm an arbitration award unless the award has been vacated, modified or corrected. Lawrence W. Olson, et al. v. Wexford Clearing Services Corporation, 2002 U.S. Dist. LEXIS 24988 at *10 (N.D. Ill. 2003) (Attached hereto as "Exhibit H"), citing International Union of Operating Engineers, Local No. 841 v. Murphy Company, 82 F. 3d 185, 188 (7th Cir. 1996); Also See 9 U.S.C. § 9. As more fully set forth above, Metter's Motion to Vacate is completely without merit. For those same reasons, this Court must grant Wachovia's Motion To Confirm.

## **CONCLUSION**

For all of the reasons set forth above this Court should deny Metter's Motion to

Vacate Arbitration Award, and allow Wachovia's Motion to Confirm Arbitration Award.

Respectfully submitted,

WACHOVIA SECURITIES, LLC,

By its attorneys,

    /s/ Daniel Rabinovitz
DANIEL M. RABINOVITZ
(Attorney Registration No. 6205299)
MICHAELS, WARD & RABINOVITZ, LLP
12 Post Office Square
Boston, MA  02109
Telephone:    (617)350-4040
Facsimile:    (617)350-4050
dmr@michaelsward.com

-    and-

/s/ Peter Sonderby
PETER SONDERBY (ARDC No. 2674653)
ULMER & BERNE, LLP
One North Franklin Street, Suite 1825
Chicago, IL  60606-3401
Telephone:    (312)324-8007 (p)
Facsimile:    (216)931-8008 (f)
psonderby@ulmer.com

Local Counsel (Pursuant to LR 83.15):

Dated: May 5, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2008, a true and correct copy of the foregoing Memorandum of Law in Support of Wachovia Securities, LLC's Opposition to Motion to Vacate Arbitration Award and Cross-Motion to Confirm Arbitration Award  was delivered by e-mail, overnight mail and via the Court's electronic filing system to the following counsel of record for Dennis Metter:

James J. Macchitelli
7247 West Touhy Avenue
Chicago, IL  60631

/s/ Daniel M. Rabinovitz_____
Daniel M. Rabinovitz
Attorney Registration No. 6205229
Michaels, Ward & Rabinovitz, LLP
12 Post Office Square
Boston, MA  02109
(617)350-4040 (p)
(617)350-4050 (f)
dmr@michaelsward.com

# EXHIBIT A

**AWARD**
**FINRA Dispute Resolution**

---

In the Matter of the Arbitration Between:

Names of Claimants

Dennis Metter and Donald Metter

        vs.

Name of Respondent

Wachovia Securities, LLC formerly d/b/a
First Union Securities

Case Number: 06-00700
Hearing Site: Chicago, Illinois

---

### NATURE OF THE DISPUTE

Associated Persons vs. Member

### REPRESENTATION OF PARTIES

Dennis Metter and Donald Metter ("Claimants") were represented by Gregory A. Friedman, Esq. and Paula K. McGuire, Esq., Freidman & Holtz, P.C., Chicago, Illinois.

Wachovia Securities, LLC formerly d/b/a First Union Securities ("Respondent") was represented by Pete S. Michaels, Esq. and Derek Anderson, Esq., Michaels, Ward & Rabinowitz, LLP, Boston, Massachusetts.

### CASE INFORMATION

The Statement of Claim was filed on or about February 10, 2006. The Submission Agreement of Claimants was signed on or about January 18, 2006. Claimants filed a Reply to Respondents' Counterclaim on or about July 17, 2006.

The Statement of Answer and Counterclaim was filed by Respondent on or about June 13, 2006. The Submission Agreement of Respondent was signed on or about June 9, 2006.

### CASE SUMMARY

Claimants asserted the following causes of action: constructive termination, breach of employment agreement, unjust enrichment, fraud, and misrepresentation. The causes of action related to Claimants' allegations that Respondent changed the terms of their commission structure for Equity Link Notes, refused to allow Dennis Metter to continue the Solicitation Agreement with Freedom Capital, constructively discharged them, and demanded repayment of promissory notes that were renegotiated without full disclosure to Claimants.

FINRA Dispute Resolution
Arbitration No. 06-00700
Award    Page 2 of 6

Unless specifically admitted in its Answer, Respondent denied the allegations made in the Statement of Claim and asserted affirmative defenses including the following: Claimants were employees at will, Claimants' damages claims are speculative and are not supported by the evidence, and Claimants voluntarily resigned from their employment with Respondent.

In its Counterclaim, Respondent asserted the following cause of action: breach of promissory notes. Respondent alleged that Claimants failed to honor their obligations under the notes upon their departure and are liable to Respondent under the terms of the notes.

Unless specifically admitted in their Reply to Counterclaim, Claimants denied the allegations made in the Counterclaim and asserted affirmative defenses including the following: Respondent breached the covenant of good faith and fair dealing, Respondent's failure to disclose material information to Claimants regarding the notes bars recovery under the doctrine of estoppel, and Respondent obtained Claimants' execution of the notes by fraud and misrepresentation.

## RELIEF REQUESTED

Claimants requested an award in the amount of:

| | |
|---|---|
| Actual/Compensatory Damages | $1,000,000.00 |
| Attorneys' Fees | Unspecified |
| Other Costs | Unspecified |
| Other Monetary Relief | Unspecified |
| Other Non-Monetary Relief | Declaratory Judgment |

Respondent requested that the claims asserted against it be denied in their entirety and that it be awarded its costs and attorneys' fees.

In its Counterclaim, Respondent requested an award in the amount of:

| | |
|---|---|
| Actual/Compensatory Damages | $ 355,757.17 |
| Interest | $ 7,407.55 |
| Attorneys' Fees | Unspecified |
| Other Costs | Unspecified |
| Other Monetary Relief | Unspecified |

Claimants requested a finding in their favor on the Counterclaim and such further relief deemed just and proper.

### OTHER ISSUES CONSIDERED & DECIDED

The parties accepted the composition of the Panel.

At the beginning of the hearing, Respondent orally moved to Amend its Answer to strike the last sentence of the first paragraph on page 4 (beginning, "It did not...") Claimants did not object to the Motion. The Panel granted the Motion on the record.

Respondent filed a post-hearing submission on or about December 17, 2007. Claimants filed a post-hearing submission on or about December 18, 2007.

The parties have agreed that the Award in this matter may be executed in counterpart copies or that a handwritten, signed Award may be entered.

### AWARD

After considering the pleadings, the testimony, the evidence presented at the hearing, and the post-hearing submissions, the Panel has decided in full and final resolution of the issues submitted for determination as follows:

1.) Claimants' claims, each and all, are hereby denied and dismissed with prejudice;

2.) Wachovia Securities, LLC formerly d/b/a First Union Securities prevails on its Counterclaim. Damages are awarded as follows:

   A. Re: Dennis Metter

      1. Dennis Metter is liable for and shall pay to Wachovia Securities, LLC formerly d/b/a First Union Securities the sum of $248,574.15 in damages;

      2. Dennis Metter is liable for and shall pay to Wachovia Securities, LLC formerly d/b/a First Union Securities interest on the above-stated sum at the rate of 7% per annum from and including September 2, 2005, through and including December 18, 2007, pursuant to the terms of the Promissory Note;

   B. Re: Donald Metter

      1. Donald Metter is liable for and shall pay to Wachovia Securities, LLC formerly d/b/a First Union Securities the sum of $114,590.00 in damages;

FINRA Dispute Resolution
Arbitration No. 06-00700
Award    Page 4 of 6

2. Donald Metter is liable for and shall pay to Wachovia Securities, LLC formerly d/b/a First Union Securities interest on the above-stated sum at the rate of 7% per annum from and including September 2, 2005, through and including December 18, 2007, pursuant to the terms of the Promissory Note;

3.) Other than Forum Fees which are specified below, the parties shall each bear their own costs and expenses incurred in this matter; and

4.) Any relief not specifically enumerated, including attorneys' fees, is hereby denied with prejudice.

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees

FINRA Dispute Resolution will retain the non-refundable filing fee for each claim:

| | |
|---|---|
| Initial Claim filing fee | = $ 375.00 |
| Counterclaim filing fee | = $ 1,000.00 |

### Member Fees

Member fees are assessed to each member firm that is a party in these proceedings or to the member firm that employed the associated persons at the time of the events giving rise to the dispute. In this matter, the member firm is Wachovia Securities, LLC formerly d/b/a First Union Securities.

| | |
|---|---|
| Member surcharge | = $ 2,250.00 |
| Pre-hearing process fee | = $ 750.00 |
| Hearing process fee | = $ 4,000.00 |

### Adjournment Fees

Adjournment granted during these proceedings:

| | |
|---|---|
| May 8-11, 2007, adjournment requested jointly | Waived |

FINRA Dispute Resolution
Arbitration No. 06-00700
Award    Page 5 of 6

## Forum Fees and Assessments

The Panel has assessed forum fees for each hearing session conducted or each decision rendered on a discovery-related motion on the papers or a contested motion for the issuance of a subpoena. A session is any meeting between the parties and the arbitrators, including a pre-hearing conference with the arbitrators, that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | | |
|---|---|---|---|---|
| Two (2) Pre-hearing sessions with a single arbitrator x $450.00 | | | = $ | 900.00 |
| Pre-hearing conferences: | July 2, 2007 | 1 session | | |
| | December 10, 2007 | 1 session | | |
| | | | | |
| Two (2) Pre-hearing sessions with Panel x $1,200.00 | | | = $ | 2,400.00 |
| Pre-hearing conferences: | December 5, 2006 | 1 session | | |
| | November 29, 2007 | 1 session | | |
| | | | | |
| Nine (9) Hearing sessions x $1,200.00 | | | = $ | 10,800.00 |
| Hearing Dates: | November 11, 2007 | 2 sessions | | |
| | November 12, 2007 | 2 sessions | | |
| | November 13, 2007 | 3 sessions | | |
| | November 14, 2007 | 2 sessions | | |
| **Total Forum Fees** | | | **= $** | **14,100.00** |

The Panel has assessed $4,700.00 of the forum fees to Dennis Metter.

The Panel has assessed $2,350.00 of the forum fees to Donald Metter.

The Panel has assessed $7,050.00 of the forum fees to Wachovia Securities, LLC formerly d/b/a First Union Securities.

## FEE SUMMARY

Claimants, Dennis Metter and Donald Metter, are jointly and severally liable for:

| | | |
|---|---|---|
| Initial Filing Fee | = $ | 375.00 |
| Total Fees | = $ | 375.00 |
| Less payments | = $ | 375.00 |
| Balance Due FINRA Dispute Resolution | = $ | 0.00 |

Claimant Dennis Metter is solely liable for:

| | | |
|---|---|---|
| Forum Fees | = $ | 4,700.00 |
| Total Fees | = $ | 4,700.00 |
| Less payments | = $ | 1,200.00 |
| Balance Due FINRA Dispute Resolution | = $ | 3,500.00 |

FINRA Dispute Resolution
Arbitration No. 06-00700
Award    Page 6 of 6

Claimant Donald Metter is solely liable for:

| | |
|---|---|
| Forum Fees | = $ 2,350.00 |
| Total Fees | = $ 2,350.00 |
| Less payments | = $ 0.00 |
| Balance Due FINRA Dispute Resolution | = $ 2,350.00 |

Respondent, Wachovia Securities, LLC formerly d/b/a First Union Securities, is liable for:

| | |
|---|---|
| Counterclaim Filing Fee | = $ 1,000.00 |
| Member Fees | = $ 7,000.00 |
| Forum Fees | = $ 7,050.00 |
| Total Fees | = $ 15,050.00 |
| Less payments | = $ 15,625.00 |
| Refund due Wachovia Securities, LLC | = $ 575.00 |

All balances are payable to FINRA Dispute Resolution and are due upon receipt.

## ARBITRATION PANEL

Victor Elting, III - Non-Public Arbitrator, Presiding Chair
Jeffrey L. Durkes - Non-Public Arbitrator
Thomas F. Ryan - Non-Public Arbitrator

Concurring Arbitrators' Signatures:

/s/  Victor Elting, III                                        12/20/07
Victor Elting, III                                               Signature Date
Non-Public Arbitrator, Presiding Chair

/s/  Jeffrey L. Durkes                                      12/20/07
Jeffrey L. Durkes                                             Signature Date
Non-Public Arbitrator

/s/  Thomas F. Ryan                                        12/20/07
Thomas F. Ryan                                               Signature Date
Non-Public Arbitrator

12/20/07
Date of Service  (For FINRA office use only)

FINRA Dispute Resolution
Arbitration No. 05-00700
Award    Page 8 of 8

Claimant Donald Metter is solely liable for:

| | | |
|---|---|---|
| Forum Fees | = $ | 2,350.00 |
| Total Fees | = $ | 2,350.00 |
| Less payments | = $ | 0.00 |
| Balance Due FINRA Dispute Resolution | = $ | 2,350.00 |

Respondent, Wachovia Securities, LLC formerly d/b/a First Union Securities, is liable for:

| | | |
|---|---|---|
| Counterclaim Filing Fee | = $ | 1,000.00 |
| Member Fees | = $ | 7,000.00 |
| Forum Fees | = $ | 7,000.00 |
| Total Fees | = $ | 15,000.00 |
| Less payments | = $ | 15,625.00 |
| Refund due Wachovia Securities, LLC | = $ | 575.00 |

All balances are payable to FINRA Dispute Resolution and are due upon receipt.

## ARBITRATION PANEL

Victor Elting, III - Non-Public Arbitrator, Presiding Chair
Jeffrey L. Durkes - Non-Public Arbitrator
Thomas F. Ryan - Non-Public Arbitrator

Concurring Arbitrators' Signatures:

_Victor Elting_ (signature)

Victor Elting, III
Non-Public Arbitrator, Presiding Chair

_12/20/07_

Signature Date

_____

Jeffrey L. Durkes
Non-Public Arbitrator

Signature Date

_____

Thomas F. Ryan
Non-Public Arbitrator

Signature Date

_____

Date of Service  (For FINRA office use only)

FINRA Dispute Resolution
Arbitration No. 05-00700
Award    Page 8 of 8

Claimant Donald Metter is solely liable for:

| | | |
|---|---|---|
| Forum Fees | = $ | 2,350.00 |
| Total Fees | = $ | 2,350.00 |
| Less payments | = $ | 0.00 |
| Balance Due FINRA Dispute Resolution | = $ | 2,350.00 |

Respondent, Wachovia Securities, LLC formerly d/b/a First Union Securities, is liable for:

| | | |
|---|---|---|
| Counterclaim Filing Fee | = $ | 1,000.00 |
| Member Fees | = $ | 7,000.00 |
| Forum Fees | = $ | 7,050.00 |
| Total Fees | = $ | 15,050.00 |
| Less payments | = $ | 15,625.00 |
| Refund due Wachovia Securities, LLC | = $ | 575.00 |

All balances are payable to FINRA Dispute Resolution and are due upon receipt.

## ARBITRATION PANEL

Victor Elting, III - Non-Public Arbitrator, Presiding Chair
Jeffrey L. Durkes - Non-Public Arbitrator
Thomas F. Ryan - Non-Public Arbitrator

Concurring Arbitrators' Signatures:

_____
Victor Elting, III                                            Signature Date
Non-Public Arbitrator, Presiding Chair

_____              20 Dec 2007
Jeffrey L. Durkes                                            Signature Date
Non-Public Arbitrator

_____
Thomas F. Ryan                                            Signature Date
Non-Public Arbitrator

_____
Date of Service  (For FINRA office use only)

Case 1:08-cv-02239   Document 9-2   Filed 05/05/2008   Page 10 of 10   ☑013/013

FINRA Dispute Resolution
Arbitration No. 06-00700
Award    Page 8 of 8

| Claimant Donald Metter is solely liable for: | | |
|---|---|---|
| Forum Fees | = $ | 2,350.00 |
| Total Fees | = $ | 2,350.00 |
| Less payments | = $ | 0.00 |
| Balance Due FINRA Dispute Resolution | = $ | 2,350.00 |

| Respondent, Wachovia Securities, LLC formerly d/b/a First Union Securities, is liable for: | | |
|---|---|---|
| Counterclaim Filing Fee | = $ | 1,000.00 |
| Member Fees | = $ | 7,000.00 |
| Forum Fees | = $ | 7,050.00 |
| Total Fees | = $ | 15,050.00 |
| Less payments | = $ | 15,625.00 |
| Refund due Wachovia Securities, LLC | = $ | 575.00 |

All balances are payable to FINRA Dispute Resolution and are due upon receipt.

## ARBITRATION PANEL

Victor Elting, III - Non-Public Arbitrator, Presiding Chair
Jeffrey L. Durkes - Non-Public Arbitrator
Thomas F. Ryan - Non-Public Arbitrator

Concurring Arbitrators' Signatures:

_____          _____
Victor Elting, III                                         Signature Date
Non-Public Arbitrator, Presiding Chair

_____          _____
Jeffrey L. Durkes                                      Signature Date
Non-Public Arbitrator

_Thomas F. Ryan_                         _12-20-07_
Thomas F. Ryan                                        Signature Date
Non-Public Arbitrator

_____
Date of Service  (For FINRA office use only)

# EXHIBIT B

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 16913    Page 1 of 12

Case 1:08-cv-02239    Document 33    Filed 05/05/2008    Page 2 of 13

☒ www.lexis.com Home

☐Switch Client┤Preferences┤Sign Off┤ ☐Help┐

┐*My Lexis*™ ┆ Search ┆ Research Tasks ┆ Get a Document ┆ *Shepard's*® ┆ Alerts ┆ Total Litigator ┆ Transactional A

─── Service: **Get by LEXSEE®**
─── Citation: **1998 U.S. Dist. LEXIS 16913**

*1998 U.S. Dist. LEXIS 16913, \**

DONALD WILSON, Plaintiff, v. STERLING FOSTER & CO., INC., CHARLES VOLPE, PHIL VALENTIN, ADAM LIEBERMAN, and JAMES BUSCHLE, Defendants.

No. 98 C 2733

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1998 U.S. Dist. LEXIS 16913

October 15, 1998, Decided

**DISPOSITION:** **[\*1]** Defendants' motion to vacate the arbitration award [9-1] denied. Plaintiff's application to confirm the arbitration award [1-1] granted. Judgment entered in favor of the plaintiff, Donald Wilson, confirming the arbitration award against the defendants Sterling Foster & Co., Inc., Charles Volpe, Phil Valentin, Adam Lieberman and James Buschle.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendants, brokerage firm and agents, filed a motion to vacate the decision of the National Association of Securities Dealers that granted plaintiff investor an arbitration award in his action to recover lost profits from stock transactions involving the firm and agents. The investor filed an application to confirm the award, pursuant to 9 U.S.C.S. § 9 of the Federal Arbitration Act.

**OVERVIEW:** The investor incurred losses and lost profits from stock transactions in which the firm and agents allegedly committed fraud by failing to carry out his instructions with regard to the stocks and allegedly took part in a stock manipulation scheme. The investor filed a statement of claim with the National Association of Securities Dealers (NASD), alleging breach of contract and fiduciary duty, violations of NASD conduct rules, misrepresentation and fraud, and violation of federal and Illinois securities laws. The investor sought punitive damages and attorneys' fees. An arbitration panel awarded the investor actual and punitive damages and attorneys' fees. The court granted the investor's application to confirm the arbitral award pursuant to the Federal Arbitration Act (FAA), 9 U.S.C.S. § 9, and denied the motion of the firm and agents to vacate the arbitration award. The court found that the firm and agents were bound to arbitrate by virtue of their membership in the NASD and that, regardless of their refusal to sign the Uniform Submission Agreements, as required by the NASD's arbitration procedure, the arbitration was to proceed.

**OUTCOME:** The court denied the motion of the firm and agents to vacate the arbitration award and granted the investor's application to confirm the arbitration award. The court found that the firm and agents were bound to arbitration because of their membership in the National Association of Securities Dealers.

**CORE TERMS:** arbitrator, arbitration, arbitration award, attorneys' fees, vacate, customer, misconduct, manifest, stock, punitive damages, postponement, broker, arbitrators exceeded, retention of jurisdiction, resignation, confirming, arbitrate, punitive,

membership, arbitration proceedings, agreement to arbitrate, fees awards, private claims, postpone, awarding, confirm, arbitration agreement, American Rule, arbitration panel, matter jurisdiction

## LEXISNEXIS® HEADNOTES                                    ☐ **Hide**

Civil Procedure > Jurisdiction > Diversity Jurisdiction > Amount in Controversy > Determinations
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview
Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act >
General Overview

HN1☐The Federal Arbitration Act itself does not provide an independent basis for federal question jurisdiction. There must be diversity of citizenship or some other independent basis for federal subject matter jurisdiction.  More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview
Civil Procedure > Alternative Dispute Resolution > Judicial Review
Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods

HN2☐Judicial review of arbitral awards is "grudgingly narrow. 9 U.S.C.S. § 9 of the Federal Arbitration Act (FAA) requires a district court acting under appropriate jurisdiction to grant an order confirming an arbitration award unless the award is vacated, modified, or corrected as prescribed in 9 U.S.C.S. §§ 10-11 of the FAA. A court may not vacate an arbitration award merely because it disagrees with the arbitrator's determination of law or fact. Errors of law or fact by the arbitrators, or an insufficiency of evidence supporting the award, do not provide adequate grounds for vacation. This limited standard of review is necessary to preserve arbitration's benefits of reduced delay and expense.  More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview
Civil Procedure > Alternative Dispute Resolution > Judicial Review
Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods

HN3☐9 U.S.C.S. § 10(a) of the Federal Arbitration Act specifies the narrow statutory grounds for vacating an arbitration award: (1) Where the award was procured by corruption, fraud, or undue means. (2) Where there was evident partiality or corruption in the arbitrators, or either of them. (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced. (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C.S. § 10(a)(1)-(4).  More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Judicial Review
Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods
Civil Procedure > Remedies > Damages > Punitive Damages

HN4☐The United States Supreme Court and the Seventh Circuit have recognized "manifest disregard of the law" as a ground for vacating an arbitration panel's decision. "Manifest disregard" means something beyond and different from mere error of law or failure of the arbitrators to understand or apply the correct law. The party alleging manifest disregard must demonstrate that the majority of arbitrators deliberately disregarded what they knew to be the law in order to reach their result.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods

HN5☐A party cannot be required to arbitrate a dispute unless he has agreed to do so.  More Like This Headnote

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 16013    Page 4 of 13    Page 3 of 12

Case 1:08-cv-02239   Document 53   Filed 05/05/2008  

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview

Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods

Securities Law > Self-Regulating Entities > National Association of Securities Dealers

HN6 Where the parties never raised the agreement issue in the arbitration proceedings, 9 U.S.C.S. § 10 of the Federal Arbitration Act does not permit the person resisting enforcement of the award to go back and litigate the question whether there was an agreement to arbitrate. More Like This Headnote

Civil Procedure > Jurisdiction > General Overview

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview

Contracts Law > Contract Interpretation > General Overview

HN7 The National Association of Securities Dealers' (NASD) subject matter jurisdiction extends to controversies related to the business of member firms. R. 10101 of the Unif. Code of Arbitration Procedure, Nat'l Ass'n of Sec. Dealers Manual, para. 10000 et seq. Its rules require its members and associated persons to submit to arbitration upon a customer's demand: Any dispute, claim or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon demand of the customer. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview

Contracts Law > Formation > Execution

Securities Law > Self-Regulating Entities > National Association of Securities Dealers

HN8 National Association of Securities Dealers, Inc. arbitration procedure requires that a Uniform Submission Agreements be included with a claim and signed by the parties, but if a party refuses to sign one, arbitration will proceed anyway pursuant to R. 10301 of the Unif. Code of Arbitration Procedure, Nat'l Ass'n of Sec. Dealers Manual, para. 10000 et seq. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview

Securities Law > Self-Regulating Entities > National Association of Securities Dealers

Securities Law > Self-Regulating Entities > National Securities Exchanges > General Overview

HN9 The National Association of Securities Dealers' specific provision for retention of jurisdiction respecting its own disciplinary mechanisms does not imply its lack of jurisdiction over private claims. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Judicial Review

Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods

Civil Procedure > Appeals > Standards of Review > General Overview

HN10 While it is true that an arbitrary denial of a reasonable request for postponement may serve as grounds for vacating an arbitration award, arbitrators are nonetheless to be accorded a degree of discretion in exercising their judgment with respect to a postponement request. Therefore, if a reasonable basis exists for an arbitrator's decision not to grant a postponement, the court will be reluctant to vacate an award on the ground of arbitrator misconduct. More Like This Headnote | *Shepardize: Restrict By Headnote*

Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods

Criminal Law & Procedure > Search & Seizure > General Overview

Evidence > Inferences & Presumptions > General Overview

*HN11* The party seeking to vacate or modify an arbitration award bears the burden of proof, and the showing required of that party in order to avoid summary affirmance of the award is high. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Self-Incrimination Privilege

Evidence > Privileges > Self-Incrimination Privilege > General Overview

*HN12* A stay contemplates "special circumstances" and the need to avoid "substantial and irreparable prejudice." The very fact of a parallel criminal proceeding, however, does not alone undercut a defendant or claimant's privilege against self-incrimination, even though the pendency of the criminal action forces him to choose between preserving his privilege against self-incrimination and losing the civil suit. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Judicial Review

Civil Procedure > Appeals > Standards of Review > General Overview

*HN13* Mere error in the interpretation of the law as opposed to failure to decide in accordance with relevant provisions of law does not provide grounds for disturbing an arbitration award. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

*HN14* Illinois law permits the recovery of attorneys' fees as damages if the plaintiff proves that the fees resulted from defendant's misconduct and the fees are reasonable. More Like This Headnote

Civil Procedure > Remedies > Damages > Punitive Damages

Securities Law > Self-Regulating Entities > National Association of Securities Dealers

Securities Law > Self-Regulating Entities > National Securities Exchanges > General Overview

*HN15* The National Association of Securities Dealers' rules provide that arbitrators may award "damages and other relief." R. 10330 of the Unif. Code of Arbitration Procedure, Nat'l Ass'n of Sec. Dealers Manual, para. 10000 et seq. The United States Supreme Court has found that this language encompasses punitive damages awards. More Like This Headnote | *Shepardize: Restrict By Headnote*

**COUNSEL:** For DONALD WILSON, plaintiff: Robert James Kuker, John William Guarisco, Neal, Gerber & Eisenberg, Chicago, IL.

For STERLING FOSTER & CO., INC., CHARLES VOLPE, PHIL VALENTIN, ADAM - LIEBERMAN, defendants: Miriam Goldman Bahcall, Rawn Howard Reinhard, Ungaretti & Harris, Chicago, IL.

**JUDGES:** John F. Grady, United States District Judge.

**OPINION BY:** John F. Grady

**OPINION**

**MEMORANDUM OPINION**

This case, in which plaintiff has applied to confirm an arbitration award, is before the court on the motion of certain defendants to vacate the award. [1] For the reasons stated in this opinion, the defendants' motion is denied.

**FOOTNOTES**

1 The parties refer to their pleadings as an application for a judgment order confirming the arbitration award and a motion to vacate the arbitration award. This is the proper terminology for these papers. *See* 9 U.S.C. §§ 9-13.

## [*2] *BACKGROUND*

Defendant Sterling Foster & Co, Inc., a New York broker-/dealer firm, formerly employed defendants Charles Volpe ("Volpe"), Phil Valentin ("Valentin"), Adam Lieberman ("Lieberman"), and James Buschle ("Buschle"). Plaintiff Donald Wilson ("Wilson") brings this case to confirm an arbitration award involving him and defendants. In September 1995, Wilson began investing through Sterling, which solicited his business and functioned as an "introducing broker." The Customer Agreement Wilson signed was not with Sterling, but with Bear Stearns & Company ("Bear Stearns"), which functioned as a "clearing broker." 2 The Customer Agreement contained the following arbitration provision:

> You agree, and by maintaining an account for you Bear Stearns agrees, that controversies arising between you and Bear Stearns, its control persons, predecessors, subsidiaries and affiliates and all respective successors, assigns and employees, whether arising prior to, or subsequent to the date hereof, shall be determined by arbitration.

Plaintiff's Memorandum in Support of His Application for Judgment Order Confirming Arbitration Award and in Opposition to Defendants' Motion **[*3]** to Vacate Arbitration Award ("Plaintiff's Memorandum"), Ex. I.

**FOOTNOTES**

2 Clearing brokers typically "carry," that is, maintain and process transactions in investors' accounts that originate with introducing brokers. *See* Henry F. Minnerop, *The Role and Regulation of Clearing Brokers*, 48 Bus. Law. 841, 841 (1993).

In early November 1996, Wilson filed a Statement of Claim against defendants with the National Association of Securities Dealers, Inc. ("NASD"), and the matter was submitted to a three-member panel of NASD arbitrators. Application for Judgment Order Confirming Arbitration Award ("Application") at 2, PP 9-10. Wilson made two basic claims. He first sought $ 78,500 from all defendants for losses and lost profits incurred from transactions in a stock called ML Direct, alleging that the defendants failed to carry out his instructions regarding the stock. *Id.*, Ex. A at 14. In his second claim, Wilson sought over $ 63,000 from Sterling and Volpe for losses allegedly incurred due to fraud and a stock manipulation **[*4]** scheme. *Id.* He asserted that the defendants' actions constituted breach of fiduciary duty, violation of NASD conduct rules, breach of contract, misrepresentation and fraud, and violation of federal and Illinois securities laws. 3 *Id.*, Ex. A at 11-14. Wilson also sought punitive damages and attorneys' fees. *Id.*

**FOOTNOTES**

3 Wilson also claimed that the actions of Volpe, Valentin, Lieberman, and Buschle were imputable to Sterling under the doctrine of respondeat superior.

The defendants denied that Wilson had directed them to complete the ML Direct transactions or that they had engaged in any fraudulent conduct or stock manipulation scheme. Moving Defendants' Memorandum in Support of Motion to Vacate Arbitration Award ("Defendants'

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 16913    Page 7 of 13    Page 6 of 12

Case 1:02-cv-22828 Document 103    Filed 05/05/2008

Memorandum"), Ex. 1. The defendants made two motions for a stay of proceedings and a motion to dismiss Wilson's claim, all of which the arbitration panel denied. *Id.* at 2.

Arbitration proceedings were held in Chicago on January 21 and 22, 1998. The panel issued an award decision **[*5]** in favor of Wilson on March 18, 1998, holding all of the defendants jointly and severally liable for $ 79,015 actual damages, plus interest, with respect only to the ML Direct claim. [4] The panel also ordered the defendants to pay Wilson $ 20,000 in punitive damages and $ 25,000 in attorneys' fees. Wilson then filed this action to confirm the arbitral award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. [5]

---

**FOOTNOTES**

[4] The panel dismissed Wilson's other claim, that the defendants engaged in fraud and in a stock manipulation scheme with respect to other securities.

[5] *HN1* The FAA itself does not provide an independent basis for federal question jurisdiction. There must be diversity of citizenship or some other independent basis for federal subject matter jurisdiction. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983). The parties here are diverse, as Wilson is a citizen of Indiana, Sterling has dual citizenship in New York and Delaware, and the remaining defendants are all citizens of New York. Moreover, the amount in controversy exceeds $ 75,000. Thus, this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

---

**[*6]** The issue in this case is whether the moving defendants [6] can demonstrate grounds for vacation of the award under § 10 of the FAA. The defendants contend that the arbitrators exceeded their powers by entering an award when the parties had never agreed to arbitrate. The defendants further argue that the arbitration panel was guilty of misconduct in refusing to postpone the hearing because "the panel forced [defendant] Lieberman to invoke his Fifth Amendment rights and he was prevented from testifying on his own behalf" and "pertinent and relevant documents were unavailable at hearing" due to an FBI seizure. Defendants' Memorandum at 4-5. The defendants also contend that the arbitrators exceeded their powers and manifestly disregarded the law by awarding punitive damages and attorneys' fees.

---

**FOOTNOTES**

[6] Defendants Sterling, Volpe, Valentin, and Lieberman move to vacate the award. Defendant Buschle does not join in the motion. For convenience, we will hereafter refer to the moving defendants as "defendants."

---

## DISCUSSION  [*7]

### A. Standard of Review

*HN2* Judicial review of arbitral awards is "grudgingly narrow." *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1253 (7th Cir. 1994). Section 9 of the FAA requires a district court acting under appropriate jurisdiction to grant an order confirming an arbitration award unless the award is vacated, modified, or corrected as prescribed in §§ 10-11 of the FAA. *See 9 U.S.C. § 9; see also Menke v. Monchecourt, 17 F.3d 1007, 1009 (7th Cir. 1994).* A court may not vacate an arbitration award merely because it disagrees with the arbitrator's determination of law or fact. Errors of law or fact by the arbitrators, or an insufficiency of evidence supporting the award, do not provide adequate grounds for vacation. 14 F.3d at 1254. This limited standard of review is necessary to preserve arbitration's "benefits of reduced delay and expense." *Id.*

Accordingly, *HN3* § 10(a) of the FAA specifies the narrow statutory grounds for vacating an

arbitration award:

> (1) Where the award was procured by corruption, fraud, or undue means.

> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.

> (3) Where the arbitrators were **[*8]** guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4). Defendants' motion to vacate implicates the third and fourth of the above grounds.

The motion also specifies a non-statutory ground for vacatur--"manifest disregard of the law"--of the award of punitive damages and attorneys' fees. *HN4* The Supreme Court and the Seventh Circuit have recognized "manifest disregard of the law" as a ground for vacating an arbitration panel's decision. See *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995); *National Wrecking Co. v. International Bhd. of Teamsters, Local 731*, 990 F.2d 957, 961 (7th Cir. 1993). "Manifest disregard" means something beyond and different from mere error of law or failure of the arbitrators to understand or apply the correct law. **[*9]** The party alleging manifest disregard must demonstrate that the majority of arbitrators deliberately disregarded what they knew to be the law in order to reach their result. See *Health Servs. Management Corp. v. Hughes*, 975 F.2d 1253, 1267 (7th Cir. 1992).

We will first address the issue of whether there was an arbitration agreement and then discuss the postponement of the hearing, attorneys' fees, and punitive damages issues.

## B. Arbitration Agreement

*HN5* A party cannot be required to arbitrate a dispute unless he has agreed to do so. See *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-49, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986). Defendants Volpe and Valentin have waived the issue of whether there was an agreement to arbitrate, as they did not raise the argument in the arbitration proceedings. See *Comprehensive Accounting Corp. v. Rudell*, 760 F.2d 138, 140 (7th Cir. 1985) (stating that, *HN6* where the parties never raised the agreement issue in the arbitration proceedings, "section 10 [of the FAA] does not permit the person resisting enforcement of the award to go back and litigate the question whether there was an agreement to arbitrate").

**[*10]** Defendants Sterling and Lieberman, however, are a different matter. They contend that they never agreed to arbitrate this dispute and thus that the NASD arbitrators exceeded their powers in entering an award. Defendants' Memorandum at 8. Wilson responds that defendants have waived any objections to the arbitrability of this matter by waiting until the hearing in the arbitration proceeding to raise the issue of NASD jurisdiction. We disagree. At the outset of the arbitration hearing, counsel for defendants alerted the panel that Sterling and Lieberman considered themselves not subject to its jurisdiction because they were no longer registered with the NASD. Reply of Moving Defendants in Support of Motion to Vacate Arbitration Award ("Reply") at 7 & Ex. 13. These statements were sufficient to preserve review by this court of the issue of Sterling and Lieberman's agreement to arbitrate.

Nonetheless, Sterling and Lieberman's argument fails. True, there is no arbitration agreement between Wilson and defendants. Wilson points to the arbitration clause in his

Customer Agreement with Bear Stearns, but nothing in the language of that clause binds defendants. They were not parties to the Customer [*11] Agreement. However, we believe that Sterling and Lieberman were bound to arbitrate this dispute by virtue of their membership in the NASD.

The system of securities industry regulation has its foundation in self-regulation by organizations such as the NASD. **HN7** The NASD's subject matter jurisdiction extends to controversies related to the business of member firms. *See* NASD R. 10101. Its rules require its members and associated persons to submit to arbitration upon a customer's demand:

> Any dispute, claim or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons *shall* be arbitrated under this Code, as provided by any duly executed and enforceable written agreement *or upon demand of the customer*.

NASD R. 10301 (emphasis added). **7** Thus, brokerage customers like Wilson do not need to show a specific arbitration agreement in order to compel arbitration under NASD rules. Sterling and Lieberman's membership in the NASD can be construed as an agreement with the NASD, the terms of which [*12] require arbitration. **8**

---

**FOOTNOTES**

**7** Lieberman, as an "associated person" with member Sterling, agreed to these provisions in a Form U-4, which he signed upon registration with the NASD.

The arbitrators expressly found in the Arbitration Award that defendants were required to submit to arbitration pursuant to this rule.

**8** *See Muh v. Newburger, Loeb & Co.*, 540 F.2d 970, 973 (9th Cir. 1976) ("The rules of the exchange 'constitute a contract between the members . . .' [so that] the Exchange provisions requiring arbitration constitute an agreement to arbitrate which is binding.").

---

Sterling and Lieberman argue that they never submitted Uniform Submission Agreements ("USA"s) to the NASD. The NASD and other self-regulatory organizations in the securities industry use USAs to show that parties explicitly agreed to submit a controversy to arbitration. **HN8** NASD arbitration procedure requires that a USA be included with a claim and signed by the parties, but if a party refuses to sign one, arbitration will proceed anyway [*13] pursuant to NASD Rule 10301. Otherwise, members and associated persons could avoid arbitration merely by refusing to sign a USA, and NASD rules would be toothless. Thus, defendants' failure to sign USAs is not determinative.

Sterling and Lieberman also argue that they are not subject to the NASD's jurisdiction because they each resigned from membership in mid-1997. Reply at 5. **9** They refer to language from the NASD By-Laws respecting retention of jurisdiction that existed at the time of their resignations, which stated that

> A resigned member or a member that has had its membership revoked shall continue to be subject to the filing of a complaint under the Code of Procedure based upon conduct which commenced prior to the effective date of the member's resignation from the [NASD] or the cancellation or revocation of its membership.

NASD By-Laws, Art. III, § 6. **10** A similarly worded section existed for associated persons. *Id.* at Art. IV, § 4. **11** Defendants point out that the above-quoted excerpt refers to the Code of Procedure, not the Code of Arbitration Procedure, which is separate. The Code of Procedure

supplies a mechanism for NASD discipline, while the **[*14]** Code of Arbitration Procedure governs private claims such as those filed by customers. The defendants conclude that there is nothing in the NASD rules that provides for retention of jurisdiction over private claims by litigants. They further argue that, in January 1998, the NASD amended the sections on retention of jurisdiction, substituting "Rules of the Association" for "Code of Procedure" to provide for a broader retention of jurisdiction. Defendants contend that their resignations terminated NASD jurisdiction over them with respect to private claims because at that time "there was absolutely nothing in the NASD Code from which to infer an agreement on their part by which the NASD would retain jurisdiction." Reply at 6.

---

**FOOTNOTES**

**9** Although we reject this argument, we note that defendants raise it for the first time in their Reply, so Wilson did not have an opportunity to address it.

**10** The NASD By-Laws have since been renumbered; the current cite is Art. IV, § 6.

**11** The current cite is NASD By-Laws, Art. V, § 4.

---

**[*15]** Defendants' arguments are unpersuasive. We believe that *HN9* the NASD's specific provision for retention of jurisdiction respecting its own disciplinary mechanisms does not imply its lack of jurisdiction over private claims such as Wilson's. Indeed, courts that have examined this issue have concluded that the requirement to arbitrate does not cease with a member's or associated person's resignation. *See O'Neel v. National Ass'n of Secs. Dealers, Inc., 667 F.2d 804 (9th Cir. 1982); Goldberg v. Donaldson, Lufkin & Jenrette Secs. Corp., 650 F. Supp. 222, 226 (N.D. Ga. 1986); Isaacson v. Hayden, Stone Inc., 319 F. Supp. 929, 930 (S.D.N.Y. 1970); see also Muh v. Newburger, Loeb & Co., 540 F.2d 970, 973 (9th Cir. 1976)* (involving stock exchange arbitration) ("It would seem strange indeed that with such a significant integrated method of dispute settlement one party could frustrate the purpose of the Exchange rule and the federal policy favoring arbitration by the mere expediency of resignation from the Exchange.")

This dispute arose when the defendants were, respectively, a member of and an associated person with the NASD, and that is all that is required for NASD jurisdiction. **[*16]** Accordingly, we hold that the arbitrators did not exceed their powers by entering an award.

### C. The Arbitrators' Refusal to Postpone the Hearing

Defendants contend that the arbitrators were guilty of misconduct by unreasonably refusing to postpone the hearing in light of the then-pending criminal investigation of Sterling and Lieberman. Defendants argue that the panel thus "forced" Lieberman to assert his Fifth Amendment privilege against self-incrimination, depriving the other defendants of his testimony. Defendants' Memorandum at 4. They also point out that "pertinent and relevant" documents were unavailable at the hearing because they were confiscated by the FBI and the U.S. Postal Service. *Id.* at 4-5.

*HN10* While it is true that an arbitrary denial of a reasonable request for postponement may serve as grounds for vacating an arbitration award, arbitrators are nonetheless to be accorded a degree of discretion in exercising their judgment with respect to a postponement request. *See Naing Int'l Enters. v. Ellsworth Assocs., 961 F. Supp. 1, 3 (D.D.C. 1997)*. Therefore, if a reasonable basis exists for an arbitrator's decision not to grant a postponement, the court will **[*17]** be reluctant to vacate an award on the ground of arbitrator misconduct. *See id.*

Although the arbitrators here did not articulate a basis upon which they denied the requested postponement, we find no abuse of discretion in their actions. We believe that the arbitrators could reasonably have decided not to grant a postponement. As for the documentary evidence seized in the criminal investigation, defendants have made no showing of attempts

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 16913    Page 11 of 13

Case 1:08-cv-02239    Document 9-3    Filed 05/05/2008    Page 10 of 12

to obtain copies or that the documents were in fact material. In their Reply, defendants state incorrectly that plaintiff has the burden of proving the immateriality of this documentary evidence. In fact, <sup>HN11</sup>☐"the party seeking to vacate or modify an arbitration award bears the burden of proof, and the showing required of that party in order to avoid summary affirmance of the award is high." _DeGaetano v. Smith Barney, Inc._, 983 F. Supp. 459, 461 (S.D.N.Y. 1997). Defendants have failed to meet this burden.

Moreover, defendants assert that Lieberman's unavailability "clearly and obviously impacted in a material way" their "ability to present evidence refuting Plaintiff's contention of a massive fraud (or to apportion blame among the Defendants)," **[*18]**  Reply at 2, but they fail to state _with precision_ how his absence affected the arbitration proceedings. [12] Such conclusory allegations will not suffice to meet the high standard for proving grounds for vacatur under 9 U.S.C. § 10(a)(3). We hold that defendants have presented no evidence that could be taken as arbitrator misconduct.

---

**FOOTNOTES**

**12** As for Lieberman's claim of a <u>Fifth Amendment</u> conflict, we note relevant Seventh Circuit language:

> _HN12_☐
>
> A stay contemplates "special circumstances" and the need to avoid "substantial and irreparable prejudice." The very fact of a parallel criminal proceeding, however, does not alone undercut [a defendant or claimant's] privilege against self-incrimination, even though the pendency of the criminal action "force[s] him to choose between preserving his privilege against self-incrimination and losing the civil suit."

_United States v. 6250 Ledge Road_, 943 F.2d 721, 729 (7th Cir. 1991) (quoting _United States v. Little Al_, 712 F.2d 133, 136 (5th Cir. 1983)). Although _6250 Ledge Road_ involved civil forfeiture proceedings and not arbitration, it is analogous to this case.

---

### [*19] D. Attorneys' Fees and Punitive Damages Awards

Finally, defendants argue that the arbitrators exceeded their powers and acted with a manifest disregard of the law in awarding attorneys' fees and punitive damages. They contend that neither Illinois common law nor the Illinois Securities Act permits the prevailing party to recover attorneys' fees. Citing the "American Rule," defendants argue that each party is responsible for its own attorneys' fees absent common law or statutory authorization to the contrary.

While the FAA is silent on the issue of attorneys' fees awards by arbitrators, there is some authority that the "American Rule" does not apply to arbitration. [13] Even assuming that it does apply, we find that the attorneys' fees award here was within the arbitrators' powers and was certainly not in deliberate disregard of the law. Wilson's Illinois securities law claim, if successful, permits recovery of attorneys' fees. 815 Ill. Comp. Stat. Ann. 5/13(A)(2) (West 1993). The panel passed on this claim, and it was well within its powers to make such an award.

---

**FOOTNOTES**

**13** This is an open question in the Seventh Circuit. See _Gingiss Int'l, Inc. v. Bormet_, 58 F.3d 328, 332 (7th Cir. 1995). However, the Sixth Circuit has found the "American Rule" to be inapplicable to arbitration. See Tennessee _Dep't of Human Servs. v. United States Dep't of Educ._, 979 F.2d 1162, 1169 (6th Cir. 1992).

---

[*20] Defendants argue that Illinois securities law permits fee awards only in actions involving the purchase or sale of securities, and that since the ML Direct claim involved only the *failure* to sell, Illinois securities law provides no basis for fees. Defendants' Memorandum at 6-7. This argument is nothing but an attempt by defendants to have us review the panel's decision for errors of law, and we defer to its decision on these matters falling within its authority. *See Eljer,* 14 F.3d 1250, 1256 (7th Cir. 1994) ("As we have stated repeatedly, HN13 mere error in the interpretation of the law (as opposed to failure to decide in accordance with relevant provisions of law) does not provide grounds for disturbing an arbitration award.").

The arbitrators could have based their attorney's fees award on other state law as well, as damages for fraud or misrepresentation. The Seventh Circuit in *Eljer* stated that HN14 "Illinois law permits the recovery of attorneys' fees as damages if the plaintiff proves that the fees resulted from the defendant's misconduct and the fees are reasonable." [14] *Id.* at 1257. As in *Eljer,* it is possible that the panel awarded attorneys' fees as damages for [*21] fraud or misrepresentation with respect to the ML Direct stock and not pursuant to a statute. Defendants do not dispute that Wilson's attorneys' fees were reasonable. Thus, we find that it was within the arbitrators' powers to award attorneys' fees. [15]

> **FOOTNOTES**
>
> [14] We decline to adopt defendants' view that this language is dicta, or that "the Seventh Circuit was clearly mistaken" on this point.
>
> [15] Defendants suggest that the arbitrators included a "vague reference to unspecified authority" in the Arbitration Award in order to "cloak their deliberate disregard of the law." Defendants' Memorandum at 7 n.4. We remind defendants that arbitrators are not required to state the reasons for a decision. *See Eljer,* 14 F.3d at 1254. Therefore, the panel's reference to unspecified authority simply cannot be construed as misconduct.

We also find that the arbitrators had a basis for awarding punitive damages and that they did not act with manifest disregard of the law on this issue either. Defendants assert that the award [*22] is "based on an incomplete record" and that it "punishes Mr. Lieberman and the other Moving Defendants for his action in invoking his Fifth Amendment rights." Defendants' Memorandum at 7-8. This argument merely recapitulates the argument that the proceedings should have been postponed pending conclusion of the criminal investigation, and defendants cite no authority suggesting that the award was beyond the panel's powers. [16]

> **FOOTNOTES**
>
> [16] We note that defendants do not address the punitive damages issue at all in their Reply.

HN15 The NASD rules provide that arbitrators may award "damages and other relief." NASD R. 10330. The Supreme Court has found that this language encompasses punitive damages awards. *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 61, 131 L. Ed. 2d 76, 115 S. Ct. 1212 (1995). We conclude that the arbitrators acted within their powers and did not act with manifest disregard of the law in awarding punitive damages.

## CONCLUSION

Defendants' motion to vacate the arbitration award [*23] is denied. Plaintiff's application to confirm the arbitration award is granted.

DATED: October 15, 1998

ENTER:

John F. Grady, United States District Judge

### JUDGMENT ORDER

For the reasons stated in the Memorandum Opinion of this date, judgment is hereby entered in favor of the plaintiff, Donald Wilson, confirming the arbitration award against the defendants Sterling Foster & Co., Inc., Charles Volpe, Phil Valentin, Adam Lieberman and James Buschle.

DATED: October 15, 1998

ENTER:

John F. Grady, United States District Judge

---

Service: **Get by LEXSEE®**
Citation: **1998 U.S. Dist. LEXIS 16913**
View: **Full**
Date/Time: **Friday, May 2, 2008 - 10:08 AM EDT**

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

LexisNexis®    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT C

Get a Document by Citation 2008 U.S. Dist. LEXIS 19381

Case 2:08-cv-02239 Document 9-4 Filed 05/05/2008 Page 2 of 9

Page 1 of 8

LexisNexis® *Total Research System*

Switch Client ┊ Preferences ┊ Sign Off ┊ ? Help

*My Lexis*™ ╲ Search ╲ Research Tasks ╲ Get a Document ╲ *Shepard's*® ╲ Alerts ╲ Total Litigator ╲ Transactional A

Service: Get by LEXSEE®
Citation: **2008 U.S. Dist. LEXIS 19381**

*2008 U.S. Dist. LEXIS 19381, \**

⬇ View Available Briefs and Other Documents Related to this Case

VERMILION COAL COMPANY, Plaintiff, v. BLACK BEAUTY COAL COMPANY, Defendant.

Case No. 07-2082

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS, URBANA
DIVISION

2008 U.S. Dist. LEXIS 19381

March 13, 2008, Decided
March 13, 2008, E-Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** A dispute arose between plaintiff lessor and defendant lessee
regarding whether the Black Lung Excise Tax (BLET) and the Abandoned Mine Land Fee
(AMLF) were severance taxes pursuant to the parties' lease and thus subject to deduction
in royalty and wheelage calculations. An arbitrator determined that the BLET and AMLF
were not severance taxes and were thus not deductible. The lessor moved to vacate in
part and the lessee moved to dismiss.

**OVERVIEW:** The lessor and the lessee were parties to a coal mining lease. The lessor
claimed that the arbitration panel should be vacated because the arbitrator exceeded his
powers under applicable federal and state law and, the arbitrator refused to hear evidence
material to the controversy. First, the court was prohibited from finding that the
arbitrator's interpretation was incorrect under the Federal Arbitration Act. Second, the
lessor argued that the decision of the arbitrator should be vacated because the arbitrator
refused to hear evidence material to the controversy. However, the court reviewed the
record and found no basis for the lessor's assertion that the arbitrator prevented the
introduction of material evidence. Rather, the arbitration panel merely bifurcated the
proceedings, proceeding first on the issue of liability. The arbitration panel determined
during the liability portion of the proceedings that while the lessee should not have
deducted the BLET/AMLF from royalty and wheelage calculations, this action did not
constitute a material breach of the lease. Accordingly, there was no reason for the
arbitration panel to proceed on the issue of damages for breach of the lease.

**OUTCOME:** The lessor's motion to vacate in part the arbitration award was denied and the
lessee's motion to dismiss was also denied.

**CORE TERMS:** lease, arbitrator, arbitration award, arbitration panel, arbitration, vacate,
coal, repudiation, wheelage, royalty, bifurcated, coal mining, deducted, default, notice,
hear, total breach, good faith, calculations, deductible, partiality, severance, evident,
severance tax, abandoned, parties agree, arbitrator's decision, arbitrators exceeded, plain
meaning, contract interpretation

## LEXISNEXIS® HEADNOTES

☐ Hide

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview 🖳

Civil Procedure > Alternative Dispute Resolution > Judicial Review 🖳

*HN1* ⚓ Pursuant to the Federal Arbitration Act, 9 U.S.C.S. § 10(a), the following are grounds for a court to set aside an arbitration award: (1) Where the award is procured by corruption, fraud, or undue means; (2) where there is evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators are guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceed their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Judicial Review 🖳

*HN2* ⚓ Courts will also set aside arbitraion awards that are in manifest disregard of the law, although the United States Court of Appeals for the Seventh Circuit has interpreted this language so narrowly that it is confined to cases in which arbitrators direct the parties to violate the law. The Seventh Circuit has stated that judicial review of arbitration awards is tightly limited; Perhaps it ought not be called review at all. While it is tempting to think that courts are engaged in judicial review of arbitration awards under the Federal Arbitration Act, they are not. When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake. That is why in the typical arbitration the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all. The court will uphold the decision of the arbitrator unless there is no possible interpretive route to it, so a non-contractual basis can be inferred. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Judicial Review 🖳

*HN3* ⚓ In a situation where the arbitrator conscientiously attempts to apply state law, pursuant to the choice of law provision in the contract, but fails to apply it correctly, the loser has no judicial remedy because it is merely a case of legal error, not of ultra vires, and there is no judicial review of arbitration awards for legal error. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Judicial Review 🖳

*HN4* ⚓ Misinterpretation of contractual language, no matter how clear, is within an arbitrator's powers; only a decision to ignore or supersede language conceded to be binding allows a court to vacate the award. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview 🖳

*HN5* ⚓ An arbitrator is not bound to hear all of the evidence tendered by the parties, but must give each of the parties to the dispute an opportunity to present its evidence and arguments. More Like This Headnote

## ⊤Available Briefs and Other Documents Related to this Case:

U.S. District Court Motion(s)
U.S. District Court Pleading(s)

**COUNSEL:** **[*1]** For Vermilion Coal Company, Plaintiff: Deborah G Cole, LEAD ATTORNEY, DGCOLE LAW, Chicago, IL; John Barr ▾, BARR & BARR, Decatur, IL.

For Black Beauty Coal Company, Defendant: Jean M Blanton ▾, ZIEMER STAYMAN WEITZEL &

SHOULDERS, Evansville, IN.

**JUDGES:** Michael P. McCuskey ▾, CHIEF U.S. DISTRICT JUDGE.

**OPINION BY:** Michael P. McCuskey ▾

### OPINION

This matter is before the court on Plaintiff Vermilion Coal Company's Motion to Vacate in Part Arbitration Award (# 7) and Defendant Black Beauty Coal Company ▾'s Motion to Dismiss Vermilion's Complaint to Vacate in Part Arbitration Award and Vermilion's Motion to Vacate in Part Arbitration Award (# 14). For the reasons that follow, Vermilion's Motion to Vacate In Part Arbitration Award is DENIED and Black Beauty's Motion to Dismiss is denied as MOOT.

BACKGROUND

Vermilion Coal Company (Vermilion) and Black Beauty Coal Company ▾(Black Beauty) are parties to a coal mining lease. Pursuant to the lease, Vermilion leases certain lands and coal mining rights located in Vermilion County, Illinois to Black Beauty. The original lease was entered into between Laswell Coal Company and Vermilion. An amended lease (Lease) was later negotiated and executed. This Lease was initially assigned to Catlin **[*2]** Coal Company and later assigned to Black Beauty in 1999. Pursuant to the Lease, Black Beauty was to pay as rent three percent of Black Beauty's gross sales to Vermilion. Black Beauty was further required to pay wheelage [1] fees to Vermilion. The Lease further provides that "any sales tax and/or severance" tax can be deducted in determining the gross sales and wheelage.

---

**FOOTNOTES**

[1] Wheelage involves payment by Black Beauty to Vermilion for transporting or shipping coal from property not owned by Vermilion through or under the leased property.

---

In 2002, a dispute arose between Vermilion and Black Beauty regarding whether the Black Lung Excise Tax (BLET) and the Abandoned Mine Land Fee (AMLF) are "severance taxes" pursuant to the Lease and thus subject to deduction in royalty and wheelage calculations. This dispute led to Vermilion filing suit in the Vermilion County Circuit Court. The Vermilion County Circuit Court stayed the litigation and referred the matter to arbitration pursuant to the terms of the Lease. The arbitration panel consisted of an umpire arbitrator (UA), one arbitrator selected by Vermilion, and one arbitrator selected by Black Beauty (party arbitrators). The parties submitted cross **[*3]** motions for summary judgment on the issue of the deductibility of the BLET and AMLF. The arbitration panel heard argument on the motions, but reserved ruling on them. The UA requested extrinsic evidence on the issues of intent and customs and practices in the coal mining industry regarding BLET and AMLF. As a result, Vermilion retained experts and conducted depositions on these issues. The parties were later asked to identify the issues for the arbitration panel. On August 24, 2004, the arbitration panel issued its order regarding the issues to be arbitrated at the November 8, 2004, hearing. The arbitration panel bifurcated from this hearing the issue of remedies for any breach.

The hearing proceeded for two weeks. On March 28, 2005, the arbitration panel issued its decision and award. Both party arbitrators filed dissents with the decision of the UA controlling. In the decision, the UA determined that the BLET and AMLF were not "severance taxes" using the plain meaning of the words and were thus not deductible pursuant to the terms of the Lease. The UA went on to address Vermilion's claims for breach of contract, fraud and anticipatory repudiation. The UA stated that "none of the facts, **[*4]** actions or events constitutes fraud nor a repudiation based on applicable Illinois law nor do Black

Beauty nor Catlin's deduction of BLET and AMLF constitute such a material breach as to constitute a repudiation of the lease." The UA further found that the "evidence in this case falls far too short to establish a total breach of the lease." Vermilion and Black Beauty then entered into negotiations relating to payment of the previously deducted BLET and AMLF. As a result of these negotiations, Black Beauty paid to Vermilion $ 372,329.44. In June 2006, Vermilion voluntarily dismissed the issues it reserved in arbitration and filed a Motion for Costs and Attorney Fees. Black Beauty filed a Cross Motion for Costs. On January 31, 2007, the arbitration panel issued its Final Decision and Award granting Vermilion $ 308,955.01 in costs. Both of the party arbitrators again filed dissents with the UA's decision controlling.

ANALYSIS

HN1⊀Pursuant to the Federal Arbitration Act, the following are grounds for this court to set aside an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either **[*5]** of them;

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). 2 HN2⊀Courts will also set aside awards that are in "manifest disregard of the law," although the Seventh Circuit has interpreted this language so narrowly that it is confined to cases in which arbitrators "'direct the parties to violate the law.'" Wise v. Wachovia Sec., LLC, 450 F.3d 265, 267 (7th Cir. 2006), quoting George Watts & Son, Inc. v. Tiffany & Co., 248 F.3d 577, 580 (7th Cir. 2001). The Seventh Circuit has stated that "[j]udicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all." Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 706 (7th Cir. 1994). While "[i]t is tempting to think that courts are engaged in judicial review of arbitration awards under the Federal **[*6]** Arbitration Act, . . . they are not." Wise, 450 F.3d at 269. "When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake . . . ." Wise, 450 F.3d at 269. "That is why in the typical arbitration . . . the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all." Wise, 450 F.3d at 269. The court will uphold the decision of the arbitrator unless "'there is no possible interpretive route to it, so a non-contractual basis can be inferred.'" Prostyakov v. Masco Corp., 513 F.3d 716, 723 (7th Cir. 2008), quoting Cuna Mut. Ins. Soc'y v. Office & Prof'l Employees Int'l Union, Local 39, 443 F.3d 556, 562 (7th Cir. 2006).

## FOOTNOTES

2 Vermilion does not bring its complaint pursuant to 9 U.S.C. § 11 which governs modification or correction of an arbitration award.

Vermilion sets forth two bases for its assertion that the decision of the arbitration panel should be vacated: (1) the UA exceeded his powers under applicable federal and state law and (2) **[*7]** the UA refused to hear evidence material to the controversy. ³

**FOOTNOTES**

3 Vermilion also asserts in its complaint and its Motion to Vacate In Part Arbitration Award that the UA exhibited evident partiality. However, in its subsequently filed Memorandum In Support of Motion to Vacate Arbitration Award, In Part, (# 16) Vermilion makes no mention of this argument. Therefore, this court assumes Vermilion has abandoned this claim. Even if Vermilion had not abandoned the claim, this court finds no evidence in the record to support Vermilion's assertion of evident partiality on the part of the UA. This is particularly true in light of the fact that the UA awarded Vermilion a total of $ 681,284.45, comprised of $ 372,329.44 in back wheelage and royalty payments and $ 308,955.01 in costs.

Vermilion first argues that the UA exceeded his powers under applicable federal and state law. Vermilion initially asserts that the UA erred in his application of Illinois law because Illinois law required a finding of breach, a finding that Black Beauty repudiated the Lease, and that Black Beauty's actions constituted fraud. Vermilion also asserts that it was error pursuant to the terms of the Lease for the UA to find **[*8]** in favor of Black Beauty on Vermilion's claims of breach of contract, fraud, and anticipatory repudiation after finding that Black Beauty was not entitled to deduct the BLET and AMLF from royalty and wheelage calculations.

The UA stated the basis for his denial of these claims at length, basing his decision on both Illinois and federal law. In deciding these claims the UA stated, *inter alia,* as follows:

> Applying the Restatement guideline standards in determining whether the contract was repudiated, the evidence in this case falls far too short to establish a total breach of the lease. While the conduct of deductions of taxes was premised on a good faith misunderstanding and belief that the taxes were deductible can be remedied by adequately compensating the lessor monetarily, it cannot under the circumstances of the case, end the contractual obligation. As the parties so prudently provided for an arbitration process to resolve disputes of the kind that spawned the problem here, it now has been resolved by the contract interpretation here and the lease should proceed in furtherance of its objectives subject, of course, to a consideration of monetary compensation.

> Illinois law with its **[*9]** own cases and their embracing noteworthy authorities including the Restatement compels the analysis here rejecting the claim of repudiation as that evidence having been viewed in its entirety has not established that the breach was so central to the parties' agreement that it defeated the essential purpose of the lease contract.

> . . .

> There is no evidence upon which anyone can assign bad faith to Ron Laswell as he jumpstarted the coal mining operation under the lease from Vermilion in 1994. For five years until the assignment to Black Beauty from his Catlin Company, Laswell and Catlin deducted BLET and AMFL in the royalty computation. Laswell and Catlin had a good faith belief that they were deductible taxes. That's an issue in this case. Vermilion made it an issue. Thereafter, from 1999 until August 2002, and until the present time, Black Beauty continued to deduct BLET and AMFL the same way that Laswell did, the same way that the lessee before the assignment did. During this total period of eight years, Vermilion never objected nor raised a question until August 2002. The evidence does not support the deception or fraud allegation of Vermilion.

> While the determination by this arbitration **[*10]** forum has interpreted the word "severance" favorably for Vermilion and the deduction now constitutes a breach for monetary compensation, the deductions were not fraudulent nor did

they constitute a breach of such level to be a repudiation. The deductions in the computation did not constitute a total breach.

Vermilion's arguments that the UA's decision was not in accordance with Illinois law is not convincing. It is clear that the UA applied Illinois law. Whether that application is correct is not for this court to decide. *HN3⚓*In a situation where the arbitrator "conscientiously attempt [s] to apply Illinois law, pursuant to the choice of law provision in the contract, but fail[s] to apply it correctly," "[t]he loser has no judicial remedy . . . because it is merely a case of legal error, not of *ultra vires,* and there is no judicial review of arbitration awards for legal error." BEM I, LLC v. Anthropologie, Inc., 301 F.3d 548, 555 (7th Cir. 2002).

Vermilion's argument that the arbitrator "flouted the plain and unambiguous language" of the Lease is no more availing. In interpreting the Lease, the arbitrator stated as follows:

> Vermilion ties into the repudiation claim Sec. 22.1 of the lease relating **[*11]** to Notice of Default and seeks to achieve a lease termination based on a notice of default to Black Beauty. Additionally Vermilion seeks a default determination for Black Beauty's failing to agree and accept Vermilion's interpretation of the lease word "severance."

> . . .

> The dispute over the meaning of the word "severance" as a deduction should have gone to arbitration for clarification before the notice was sent out. The parties had a bona fide dispute and this lease should not be construed to permit the party who loses a good faith dispute to lose all. It has already been determined that a repudiation did not occur. Accordingly, it was not an event of default, and the notice and demand was untimely. It can become timely if the lessee fails to comply with this arbitration decision.

The following clause in the Lease supports the arbitrator's interpretation:

> It is the intention of both parties to successfully promote and operate an underground coal mine to remove and sell the coal encompassed in this agreement. To that end, both parties agree to cooperate with each other and that each owes to the other a duty of good faith dealing.

Thus, it is apparent from a review of the arbitrator's decision **[*12]** that he did not fail to interpret the contract. Rather, Vermilion would have this court find that the arbitrator's interpretation was incorrect, something this court cannot do under the FAA. See Wise, 450 F.3d at 269.

In support of its assertion that this court can review the decision of the arbitrator, Vermilion relies on Anheuser-Busch, Inc. v. Local Union No. 744, Affiliated with the Int'l Bhd. of Teamsters, 280 F.3d 1133 (7th Cir. 2002). However, in a subsequent decision, the Seventh Circuit indicated that Anheuser-Busch does not stand for the proposition that the court's interpretation of the plain meaning of a contract can displace that of the arbitrator. See Int'l Union of Operating Eng'rs, Local 139, v. J.H. Findorff & Son, Inc., 393 F.3d 742, 747 (7th Cir. 2004). Rather, *HN4⚓*"misinterpretation of contractual language, no matter how 'clear,' is within the arbitrator's powers; only a decision to ignore or supersede language conceded to be binding allows a court to vacate the award." J.H. Findorff, 393 F.3d at 745. Accordingly, this court concludes that it cannot review the arbitrator's decision based upon Vermilion's assertion that the arbitrator exceeded his powers.

Vermilion next **[*13]** argues that the decision of the arbitrator should be vacated because the arbitrator refused to hear evidence material to the controversy. In support of this argument, Vermilion states that in July of 2004, the parties were asked to identify the issues for arbitration. In its subsequent order identifying the issues to be heard at the arbitration

Get a Document by Citation 2008 U.S. Dist. LEXIS 19381    Page 8 of 9    Page 7 of 8

Case 2:08-cv-02299    Document 9-4    Filed 05/05/2008

hearing in November 2004, the arbitration panel indicated that a hearing on the remedies for any breach of the Lease would be bifurcated. Vermilion contends that, as a result, it "presented little or no evidence or argument on the bifurcated issues of remedies for any breach of the lease including accounting, damages or termination." Vermilion states it "intended to, and would have, submitted testimony on the bifurcated issues that it had invested more than $ 20 million in the leased property, and that several hundred older investors relied upon the income derived from royalties for retirement income."

This court has reviewed the record and finds no basis for Vermilion's assertion that the arbitrator prevented the introduction of material evidence. Rather, the arbitration panel merely bifurcated the proceedings, proceeding first on the issue **[*14]** of liability. The arbitration panel determined during the liability portion of the proceedings that while Black Beauty should not have deducted the BLET/AMLF from royalty and wheelage calculations, this action did not constitute a material breach of the Lease. Accordingly, there was no reason for the arbitration panel to proceed on the issue of damages for breach of the Lease. In addition, the record does not indicate that anything prevented Vermilion from presenting evidence it believed was relevant to the liability portion of the proceedings. Furthermore, [HN5] the "arbitrator is not bound to hear all of the evidence tendered by the parties," but must "give each of the parties to the dispute an opportunity to present its evidence and arguments." Guo v. Citibank Global Markets, 2007 U.S. Dist. LEXIS 82619, 2007 WL 3286696 at *4 (S. D. Ind. 2007), quoting Generica Ltd. v. Pharmaceutical Basics, Inc., 125 F.3d 1123, 1130 (7th Cir. 1997). The court concludes that the arbitration panel did provide Vermilion an opportunity to present its evidence and arguments. Accordingly, Vermilion has failed to establish an adequate basis for this court to vacate the arbitration award.

Because this court has concluded that Vermilion is **[*15]** not entitled to the relief it seeks in this matter, this court need not reach the merits of Black Beauty's Motion to Dismiss (# 14). Accordingly, the Motion to Dismiss is denied as MOOT.

IT IS THEREFORE ORDERED:

(1) Vermilion's Motion to Vacate In Part Arbitration Award [7] is DENIED

(2) Black Beauty's Motion to Dismiss [14] is denied as MOOT.

(3) This case is terminated.

ENTERED this 13th day of March, 2008

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY

CHIEF U.S. DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **2008 U.S. Dist. LEXIS 19381**
View: **Full**
Date/Time: **Friday, May 2, 2008 - 10:25 AM EDT**

 LexisNexis® About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights

reserved.

# EXHIBIT D

(3) The panel will allocate the cost of the honoraria under paragraph (e)(1) to the parties pursuant to Rules 10205(c) and 10332(c).

(f) Payment for Deciding Contested Subpoena Requests Without a Hearing Session

(1) The honorarium for deciding one or more contested motions requesting the issuance of a subpoena without a hearing session shall be $200. The honorarium shall be paid on a per case basis to each arbitrator who decides the contested motion(s). The parties shall not be assessed more than $600 in fees under this paragraph in any arbitration proceeding. The honorarium shall not be paid for cases administered under Rules 10203 and 10302.

(2) For purposes of paragraph (f)(1), a contested motion requesting the issuance of a subpoena shall include a motion requesting the issuance of a subpoena, the draft subpoena, a written objection from the party opposing the issuance of the subpoena, and any other documents supporting a party's position.

(3) The panel will allocate the cost of the honorarium under paragraph (f)(1) to the parties pursuant to Rules 10205(c) and 10332(c).

Amended by SR-NASD-2006-101 eff. April 2, 2007.
Amended by SR-NASD-2005-052 eff. Sept. 26, 2005.
Amended by SR-NASD-2004-042 eff. June 6, 2005.
Amended by SR-NASD-2003-164 eff. Aug. 16, 2004.
Amended by SR-NASD-99-23 eff. March 18, 1999.
Amended by SR-NASD-97-79 eff. March 18, 1999.
Amended eff. May 30, 1980; Feb. 8, 1982; Jan. 14, 1987.
Adopted eff. June 14, 1977

**Selected Notice to Members:** 99-23, 04-53, 05-35, 05-55

## 10105. Non-Waiver of Association Objects and Purposes

The submission of any matter to arbitration under this Code shall in no way limit or preclude any right, action or determination by the Association which it would otherwise be authorized to adopt, administer or enforce. If any matter comes to the attention of an arbitrator during and in connection with the arbitrator's participation in a proceeding, either from the record of the proceeding or from material or communications related to the proceeding, that the arbitrator has reason to believe may constitute a violation of the Association's Rules or the federal securities laws, the arbitrator may initiate a referral of the matter to the Association for disciplinary investigation; provided, however, that any such referral should only be initiated by an arbitrator after the matter before him has been settled or otherwise disposed of, or after an award finally disposing of the matter has been rendered pursuant to Rule 10330 of the Code.

Amended by SR-NASD-93-75 eff. Aug. 15, 1994

## 10106. Legal Proceedings

No party shall, during the arbitration of any matter, prosecute or commence any suit, action, or proceeding against any other party touching upon any of the matters referred to arbitration pursuant to this Code.

**Selected Notices to Members:** 84-71, 94-61.

## 10200. Industry and Clearing Controversies
## 10201. Required Submission

(a) Except as provided in paragraph (b) or Rule 10216, a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons,

and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of:

(1) a member against another member;

(2) a member against a person associated with a member or a person associated with a member against a member; and

(3) a person associated with a member against a person associated with a member.

(b) A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose.

(c) Any dispute, claim or controversy involving an act or failure to act by a clearing member; a registered clearing agency; or participants, pledgees, or other persons using the facilities of a registered clearing agency, under the rules of any registered clearing agency with which the Association has entered into an agreement to utilize the Association's arbitration facilities and procedures shall be arbitrated in accordance with such agreement and the rules of such registered clearing agency.

---

Amended by SR-NASD-99-08 eff. Jan. 18, 2000.
Amended by SR-NASD-97-77 eff. Jan. 1, 1999.
Amended eff. Oct. 1, 1993.

**Selected Notice to Members:** 99-96, 98-56.

---

## 10202. Composition of Panels

(a) In disputes subject to arbitration that arise out of the employment or termination of employment of an associated person, and that relate exclusively to disputes involving employment contracts, promissory notes or receipt of commissions, the panel of arbitrators shall be appointed as provided by paragraph (b)(1) or (2) or Rule 10203, whichever is applicable. In all other disputes arising out of the employment or termination of employment of an associated person, the panel of arbitrators shall be appointed as provided by Rule 10212, 10302 or 10308, whichever is applicable.

**(b)(1) Composition of Arbitration Panel**

**(A) Claims of $50,000 or Less**

If the amount of a claim is $50,000 or less, the Director shall appoint an arbitration panel composed of one non-public arbitrator, unless the parties agree to the appointment of a public arbitrator.

(i) If the amount of a claim is $25,000 or less and an arbitrator appointed to the case requests that a panel of three arbitrators be appointed, the Director shall appoint an arbitration panel composed of three non-public arbitrators, unless the parties agree to a different panel composition.

(ii) If the amount of a claim is greater than $25,000 and not more than $50,000 and a party in its initial filing or an arbitrator appointed to the case requests that a panel of three arbitrators be appointed, the Director shall appoint an arbitration panel composed of three non-public arbitrators, unless the parties agree to a different panel composition.

**(B) Claims of More than $50,000**

# EXHIBIT E

**Rev. Form U4 (10/2005)**

UNIFORM APPLICATION FOR SECURITIES INDUSTRY REGISTRATION OR TRANSFER

| INDIVIDUAL NAME: | | SSN: | |
|---|---|---|---|
| INDIVIDUAL CRD #: | | FIRM CRD #: | |

## 15. SIGNATURES

Please Read Carefully All signatures required on this Form U4 filing must be made in this section

A "signature" includes a manual signature or an electronically transmitted equivalent For purposes of an electronic form filing, a signature is effected by typing a name in the designated signature field. By typing a name in this field, the signatory acknowledges and represents that the entry constitutes in every way, use, or aspect, his or her legally binding signature
15A  INDIVIDUAL/APPLICANT'S ACKNOWLEDGEMENT AND CONSENT This section must be completed on all initial or Temporary Registration form filings
15B  FIRM/APPROPRIATE SIGNATORY REPRESENTATIONS This section must be completed on all initial or Temporary Registration form filings
15C  TEMPORARY REGISTRATION ACKNOWLEDGMENT This section must be completed on Temporary Registration form filings to be able to receive Temporary Registration
15D  INDIVIDUAL/APPLICANT'S AMENDMENT ACKNOWLEDGMENT AND CONSENT This section must be completed on any amendment filing that amends any information in Section 14 (Disclosure Questions) or any Disclosure Reporting Page (DRP).
15E  FIRM/APPROPRIATE SIGNATORY AMENDMENT REPRESENTATIONS This section must be completed on all amendment form filings.
15F  FIRM/APPROPRIATE SIGNATORY CONCURRENCE This section must be completed to concur with a U4 filing made by another firm (IA/BD) on behalf of an individual that is also registered with that other firm (IA/BD)

### 15A. INDIVIDUAL/APPLICANT'S ACKNOWLEDGEMENT AND CONSENT

1  I swear or affirm that I have read and understand the items and instructions on this form and that my answers (including attachments) are true and complete to the best of my knowledge  I understand that I am subject to administrative, civil or criminal penalties if I give false or misleading answers

2  I apply for registration with the jurisdictions and SROs indicated in Section 4 (SRO REGISTRATION) and Section 5 (JURISDICTION REGISTRATION) as may be amended from time to time and, in consideration of the jurisdictions and SROs receiving and considering my application, I submit to the authority of the jurisdictions and SROs and agree to comply with all provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the jurisdictions and SROs as they are or may be adopted, or amended from time to time  I further agree to be subject to and comply with all requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by the jurisdictions and SROs, subject to right of appeal or review as provided by law

3  I agree that neither the jurisdictions or SROs nor any person acting on their behalf shall be liable to me for action taken or omitted to be taken in official capacity or in the scope of employment, except as otherwise provided in the statutes, constitutions, certificates of incorporation, by-laws or the rules and regulations of the jurisdictions and SROs

4  I authorize the jurisdictions, SROs, and the designated entity to give any information they may have concerning me to any employer or prospective employer, any federal, state or municipal agency, or any other SRO and I release the jurisdictions, SROs, and the designated entity, and any person acting on their behalf from any and all liability of whatever nature by reason of furnishing such information

5  I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4 (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction

6  For the purpose of complying with the laws relating to the offer or sale of securities or commodities or investment advisory activities, I irrevocably appoint the administrator of each jurisdiction indicated in Section 5 (JURISDICTION REGISTRATION) as may be amended from time to time, or such other person designated by law, and the successors in such office, my attorney upon whom may be served any notice, process, pleading, subpoena or other document in any action or proceeding against me arising out of or in connection with the offer or sale of securities or commodities, or investment advisory activities or out of the violation or alleged violation of the laws of such jurisdictions  I consent that any such action or proceeding against me may be commenced in any court of competent jurisdiction and proper venue by service of process upon the appointee as if I were a resident of, and had been lawfully served with process in the jurisdiction  I request that a copy of any notice, process, pleading, subpoena or other document served hereunder be mailed to my current residential address as reflected in this form or any amendment thereto

7  I consent that the service of any process, pleading, subpoena, or other document in any investigation or administrative proceeding conducted by the SEC, CFTC or a jurisdiction or in any civil action in which the SEC, CFTC or a jurisdiction are plaintiffs, or the notice of any investigation or proceeding by any SRO against the applicant, may be made by personal service or by regular, registered or certified mail or confirmed telegram to me at my most recent business or home address as reflected in this Form U4, or any amendment thereto,

by leaving such documents or notice at such address, or by any other legally permissible means  I further stipulate and agree that any civil action or administrative proceeding instituted by the SEC, CFTC or a jurisdiction may be commenced by the service of process as described herein, and that service of an administrative subpoena shall be effected by such service, and that service as aforesaid shall be taken and held in all courts and administrative tribunals to be valid and binding as if personal service thereof had been made

8  I authorize all my employers and any other person to furnish to any jurisdiction SRO, designated entity, employer, prospective employer, or any agent acting on its behalf, any information they have, including without limitation my creditworthiness, character, ability, business activities, educational background, general reputation, history of my employment and, in the case of former employers, complete reasons for my termination  Moreover  I release each employer, former employer and each other person from any and all liability, of whatever nature, by reason of furnishing any of the above information, including that information reported on the Uniform Termination Notice for Securities Industry Registration (Form U5)  I recognize that I may be the subject of an investigative consumer report and waive any requirement of notification with respect to any investigative consumer report ordered by any jurisdiction, SRO, designated entity, employer, or prospective employer  I understand that I have the right to request complete and accurate disclosure by the jurisdiction, SRO, designated entity, employer or prospective employer of the nature and scope of the requested investigative consumer report

9  I understand and certify that the representations in this form apply to all employers with whom I seek registration as indicated in Section 1 (GENERAL INFORMATION) or Section 6 (REGISTRATION REQUESTS WITH AFFILIATED FIRMS) of this form  I agree to update this form by causing an amendment to be filed on a timely basis whenever changes occur to answers previously reported  Further, I represent that  to the extent any information previously submitted is not amended, the information provided in this form is currently accurate and complete

10  I authorize any employer or prospective employer to file electronically on my behalf any information required in this form or any amendment thereto; I certify that I have reviewed and approved the information to be submitted to any jurisdiction or SRO on this Form U4 Application; I agree that I will review and approve all disclosure information that will be filed electronically on my behalf; I further agree to waive any objection to the admissibility of the electronically filed records in any criminal, civil or administrative proceeding

Applicant or applicant's agent has typed applicant's name under this section to attest to the completeness and accuracy of this record. The applicant recognizes that this typed name constitutes, in every way, use or aspect, his or her legally binding signature

Date (MM/DD/YYYY) _____

_____
**Signature of Applicant**

_____
Printed Name

# EXHIBIT F

## NASD ARBITRATION UNIFORM SUBMISSION AGREEMENT

Claimant(s)

In the Matter of the Arbitration Between

Name(s) of Claimant(s)
Dennis Metter and Donald Metter

and

Name(s) of Respondent(s)
Wachovia Securities, LLC

1.  The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.

2.  The undersigned parties hereby state that they have read the procedures and rules of the sponsoring organization relating to arbitration.

3.  The undersigned parties agree that in the event a hearing is necessary, such hearing shall be held at a time and place as may be designated by the Director of Arbitration or the arbitrator(s). The undersigned parties further agree and understand that the arbitration will be conducted in accordance with the Constitution, By-Laws, Rules, Regulations, and/or Code of Arbitration Procedure of the sponsoring organization.

4.  The undersigned parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

5.  The parties hereto have signed and acknowledged the foregoing Submission Agreement.


Dennis R. Metter
Claimant Name (please print)

_____                          1/18/06
Claimant's Signature                                        Date


Donald J. Metter
Claimant Name (please print)

_____                          1/18/06
Claimant's Signature                                        Date

**If needed, copy this page.**

23

# EXHIBIT G

Dennis & Donald Metter vs. Wachovia Securities        Page 1
Case No. 06-00700, Arbitration Hearing, 12/11-14/07
Tape 1 of 16

1  Elting:      Good morning.

2  Many Voices: Good morning.

3  Elting:      Seated at the head of the table is the

4               arbitration panel.  My name is Victor Elting.

5               I'm the chairman of the panel.  And on my left is

6               --

7  Durkees:     Jeff Durkees (phonetic).

8  Ryan:        Tom Ryan.

9  Elting:      I'd like to restate to the parties, any

10              disclosures that have been previously made by the

11              arbitrators and any additional disclosures we'll

12              make to the parties at this time.  And the

13              arbitrators will confirm on the record their

14              current classifications as either public or

15              nonpublic arbitrators.  I think I can state that

16              we're all nonpublic arbitrators.  That means

17              we're industry arbitrators.  That goes with the

18              rules that attach to this proceeding.  But do any

19              of the arbitrators have anything further to add

20              to the disclosures that have been previously

21              made?

22  Durkees:    This is Jeff Durkees.  No, I don't.

23  Ryan:       This is Tom Ryan.  I do not.

24  Elting:     And Victor Elting.  I do not.

Dennis & Donald Metter vs. Wachovia Securities    Page 2
Case No. 06-00700, Arbitration Hearing, 12/11-14/07
Tape 1 of 16

| | | |
|---|---|---|
| 1 | | May I ask that the parties and their |
| 2 | | attorneys of record all introduce themselves. |
| 3 | | I'll start on this side of the room. |
| 4 | Anderson: | Yes.  Derek Anderson of Michaels, Ward & |
| 5 | | Rabinovitz on behalf of the respondent, Wachovia |
| 6 | | Securities. |
| 7 | Michaels: | And I'm Pete Michaels of the same firm for the |
| 8 | | same client. |
| 9 | Scales: | Steve Scales with Secure Financial Services.  I'm |
| 10 | | the expert. |
| 11 | Niewolny: | Dean Niewolny with Wachovia Securities. |
| 12 | Elting: | On this side. |
| 13 | Friedman: | Gregory Friedman of Friedman & Holtz and Paula |
| 14 | | Maguire of Friedman & Holtz, counsel for Donald |
| 15 | | Metter, to the right of Ms. Maguire, and Dennis |
| 16 | | Metter to the right of (inaudible). |
| 17 | Elting: | Who -- let me start with you, Mr. Friedman. |
| 18 | | Who's counsel should be reflected in the award as |
| 19 | | counsel representative for your party? |
| 20 | Friedman: | Friedman & Holtz, PC, I guess counsel for the |
| 21 | | plaintiffs. |
| 22 | Elting: | Mr. Anderson? |
| 23 | Anderson: | Michaels, Ward & Rabinovitz. |
| 24 | Elting: | Do the parties accept the panel's composition? |

Dennis & Donald Metter vs. Wachovia Securities    Page 3
Case No. 06-00700, Arbitration Hearing, 12/11-14/07
Tape 1 of 16

1  Friedman:    The claimants do?

2  Anderson:    Yes on behalf of the responder.

3  Elting:      The arbitrators have previously submitted their

4               properly executed oath of arbitration -- properly

5               executed oaths of arbitrator.  And -- correct?

6  Male:        Yes.

7  Elting:      Correct?

8  Male:        Yes.

9  Elting:      This controversy has been submitted to this panel

10              of arbitrators for hearing in accordance with the

11              Code of Arbitration Procedure.  The panel is

12              authorized to determine each of the matters set

13              forth in the statements submitted and filed with

14              FINRA Dispute Resolution.  Unless the law directs

15              otherwise, all awards rendered pursuant to the

16              code will be final and not subject to appeal.  It

17              is suggested that no interruptions be made during

18              an individual's testimony.  The parties are

19              entitled to make objections, cross-examine and

20              redirect witness, and may in the direction of the

21              arbitrators present rebuttal testimony.  The

22              arbitrators may ask questions as they deem

23              appropriate.

# EXHIBIT H

LexisNexis® *Total Research System*
Switch Client ┊ Preferences ┊ Sign Off ┊ [?] Help

My Lexis™ ╲ Search ╲ Research Tasks ╲ Get a Document ╲ *Shepard's®* ╲ Alerts ╲ Total Litigator ╲ Transactional A

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 24988**

*2002 U.S. Dist. LEXIS 24988, \**

LAWRENCE W. OLSON, individually and as Trustee of the Lawrence W. Olson Charitable
Remainder Trust dated 11/01/92, Plaintiff, v. WEXFORD CLEARING SERVICES
CORPORATION, Defendant.

No. 02 C 7644

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN
DIVISION

2002 U.S. Dist. LEXIS 24988

December 31, 2002, Decided
January 2, 2003, Docketed

**SUBSEQUENT HISTORY:** Affirmed by Olson v. Wexford Clearing Servs. Corp., 2005 U.S.
App. LEXIS 1715 (7th Cir. Ill., Feb. 3, 2005)

**DISPOSITION:** **[\*1]** Defendant's motion for judgment on the pleadings was granted.
Arbitration award in was confirmed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff, individually and as a trustee, sought to vacate the
dismissal of its arbitration claims against defendant corporation pursuant to 9 U.S.C.S. §
10(a)(3) of the Federal Arbitration Act (FAA). The corporation moved for judgment on the
pleadings pursuant to Fed. R. Civ. P. 12(c), claiming the trustee's petition was untimely, or
it moved to dismiss for failure to state a cause of action pursuant to Fed. R. Civ. P. 12(b)
(6).

**OVERVIEW:** If successful on either motion, the corporation moved to confirm the
arbitration award pursuant to the FAA, at 9 U.S.C.S. § 9. The trustee did not dispute he
filed his petition more than three months after the arbitration panel delivered its decision
to dismiss his claims. Rather, the trustee claimed the decision did not become final until
the arbitration panel delivered its decision to deny his motion for leave to file a second
amended statement of claim on July 29, 2002, and advanced four reasons in support. The
arguments lacked merit. Contrary to the trustee's position, nothing on the face of the
dismissal order indicated it was not a final order. The dismissal order unambiguously
resolved the arbitration in favor of the corporation, therefore, it was final. The trustee
failed to present any question regarding the dismissal order's finality within the 90 day
limitations period and the trustee's post-award motion did not toll the time for filing a
petition to vacate the award. As the corporation timely moved for confirmation and the
trustee failed to successfully and timely challenge the award, the arbitration award in favor
of the corporation was confirmed.

**OUTCOME:** The corporation's motion for judgment on the pleadings was granted and its
alternative motion to dismiss for failure to state a cause of action was moot. The
arbitration award in favor of the corporation was confirmed.

**CORE TERMS:** dismissal order, arbitration, arbitration award, arbitrator's, arbitration

panel, statement of claim, petitions to vacate, limitations period, clearing, untimely, vacate, failure to state a cause of action, individually, confirmed, chairman, confirm, manager, arbitration proceeding, brokerage firm, oral argument, letter dated, leave to file, decision to deny, involuntary dismissal, confirmation, pre-hearing, contradict, ambiguous, finality, guess

## LEXISNEXIS® HEADNOTES                                                        ⊟ **Hide**

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims
Civil Procedure > Pretrial Judgments > Judgment on the Pleadings
Civil Procedure > Judgments > General Overview

*HN1* The court applies the same standard in considering a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) as a motion to dismiss for failure to state a cause of action under Fed. R. Civ. P. 12(b)(6). For purposes of both motions, the court accepts all well-pleaded allegations in the petition as true and draws all reasonable inferences in the non-moving party's favor. However, if documents attached to the complaint contradict allegations in the complaint, the documents trump the allegations. Indeed, a plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods
Civil Procedure > Judgments > Relief From Judgment > General Overview
International Trade Law > Dispute Resolution > Arbitration

*HN2* See 9 U.S.C.S. § 12.

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims
Civil Procedure > Dismissals > Involuntary Dismissals > Failures to State Claims
Civil Procedure > Appeals > Reviewability > General Overview

*HN3* An involuntary dismissal is with prejudice unless the order specifies otherwise. Unless the judgment provides otherwise, involuntary dismissal, including a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), is an adjudication on the merits -- in other words, a dismissal with prejudice. The possibility of a later amendment to a dismissal order does not affect its finality for purposes of appeal. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > General Overview
Securities Law > Self-Regulating Entities > National Association of Securities Dealers

*HN4* See Nat'l Ass'n Sec. Dealers Manual R. 10330.

Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule

*HN5* Courts go beyond a document's form and delve into its substance and impact to determine whether the decision is final. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Judicial Review

*HN6* If the arbitrator himself thinks he is through with a case, then his award is final and appealable. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview
Civil Procedure > Alternative Dispute Resolution > Judicial Review
Governments > Legislation > Statutes of Limitations > General Overview

*HN7* The United States Court of Appeals for the Seventh Circuit expresses skepticism about the propriety of engrafting Fed. R. Civ. P. 54(b) onto the arbitration statute. Indeed, some cases deem an arbitral award final if it finally resolves a separate claim, or the liability of a particular party, even if other claims or other parties

remain before the arbitrators. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Judicial Review
Governments > Legislation > Statutes of Limitations > Time Limitations
International Trade Law > Dispute Resolution > Arbitration

HN8 Under the Federal Arbitration Act, the court may vacate an arbitrator's award where the arbitrators so imperfectly executed their powers that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C.S. § 10(a)(4). Alternatively, the court may send an ambiguous decision back to the arbitrators for clarification. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court
Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend

HN9 Even district judges retain discretion to treat a post-judgment motion for leave to amend as a simultaneous request for relief from judgment. More Like This Headnote

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview
Civil Procedure > Alternative Dispute Resolution > Judicial Review
Governments > Legislation > Statutes of Limitations > Time Limitations

HN10 Under the Federal Arbitration Act, the district court must grant a timely motion to confirm an arbitration award unless the award has been vacated, modified or corrected. More Like This Headnote

**COUNSEL:** For LAWRENCE W. OLSON, plaintiff: Patrick Christopher Keeley, Piccione, Keeley & Associates, Wheaton, IL.

For LAWRENCE W. OLSON, plaintiff: Peter B. Shaeffer, Chicago, IL.

For WEXFORD CLEARING SERVICES CORPORATION, defendant: Robert P. Bramnik, Samuel Seth Cohen, Wildman, Harrold, Allen & Dixon, Chicago, IL.

**JUDGES:** Suzanne B. Conlon, United States District Judge.

**OPINION BY:** Suzanne B. Conlon

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Lawrence W. Olson ("Olson"), individually and as trustee of the Lawrence W. Olson Charitable Remainder Trust dated 11/01/92, petitions to vacate the dismissal of its arbitration claims against Wexford Clearing Services Corporation ("Wexford") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(3). In response, Wexford moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), claiming Olson's petition is untimely. Alternatively, Wexford moves to dismiss Olson's petition for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6). If successful on either motion, Wexford moves to confirm the arbitration award **[*2]** pursuant to the FAA, 9 U.S.C. § 9.

**BACKGROUND**

HN1 The court applies the same standard in considering a motion for judgment on the pleadings under Rule 12(c) as a motion to dismiss for failure to state a cause of action under Rule 12(b)(6). Forsyth v. Village of Sussex, 199 F.3d 363, 368 n. 6 (7th Cir. 2000). For purposes of both motions, the court accepts all well-pleaded allegations in the petition as

true and draws all reasonable inferences in Olson's favor. *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Medical School*, 167 F.3d 1170, 1173 (7th Cir. 1999). However, if documents attached to the complaint contradict allegations in the complaint, the documents trump the allegations. *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998). Indeed, "[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment." *Id., quoting In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992).

The following facts are taken from Olson's petition except where an attached exhibit contradicts **[*3]** the allegations contained in the petition. On July 29, 1998, Olson filed a statement of claim before the National Association of Dealers, Inc. ("NASD"). Compl. at P 5. As respondents, Olson named R.D. Kushnir & Co., the brokerage firm for Olson's accounts, Richard D. Kushnir, the owner and manager of R.D. Kushnir & Co., Margaret A. Hopkins ("Hopkins"), the officer manager of R.D. Kushnir & Co., and Wexford, the clearing firm carrying Olson's accounts on a fully-disclosed basis for R.D. Kushnir & Co. *Id.* at Ex. 1. Thereafter, Olson amended its statement of claim to dismiss Hopkins and add William Cunningham, a sales manager at R.D. Kushnir & Co., and J.E. Liss & Co., Inc., the brokerage firm that accepted R.D. Kushnir & Co.'s transfer of Olson's accounts. *Id.* at Ex. 3. According to Olson, the arbitration proceeding was effectively terminated as to R.D. Kushnir & Co. after it was placed in receivership and as to Richard Kushnir after he filed for individual bankruptcy. *Id.* at PP 8 and 24.

Wexford moved to dismiss the amended statement of claim. Compl. at P 9. On February 18, 2001, the arbitration chairman granted Wexford's motion to dismiss. *Id.* at P 18. At a pre-hearing **[*4]** conference held by telephone on February 21, 2001, Olson moved for reconsideration of the dismissal. *Id.* at P 19. A briefing schedule with an opportunity for oral argument was set. *Id.* After the arbitration chairman withdrew from the panel and a new chairman was appointed, the parties re-briefed Wexford's motion to dismiss. *Id.* at PP 23, 25, 28 and 29. On April 15, 2002, the arbitration panel heard oral argument on Wexford's motion to dismiss. *Id.* at P 30. By letter dated April 29, 2002, the arbitration panel transmitted its order dismissing Wexford from the arbitration. *Id.* The order provides:

> The Pre-Hearing Conference was convened to hear oral argument on Respondent Wexford's Motion to Dismiss; the motion having been fully briefed; the Panel finds in favor of Respondent Wexford; Wexford is hereby Dismissed from this arbitration.

*Id.* On June 21, 2002, Olson filed a motion for leave to file a second amended statement of claim. *Id.* at P 31. By letter dated July 29, 2002, the arbitration panel denied Olson's motion. *Id.* at P 32. The order provides:

> After careful review of Claimant's Motion for Consent to file Second Amended Statement **[*5]** of Claim and responses, the panel has DENIED the motion.

*Id.*

On October 24, 2002, Olson filed his petition to vacate the arbitration dismissal. In his petition, Olson alleges the arbitration panel denied him the opportunity to offer pertinent and material evidence in support of his claims. *Id.* at PP 33, 36, 40, 45.

## DISCUSSION

### I. Wexford's Motion for Judgment on the Pleadings

Wexford claims Olson's petition is untimely. The FAA specifically provides:

> *HN2* Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.

9 U.S.C. § 12. Olson does not dispute he filed his petition more than three months after the arbitration panel delivered its decision to dismiss his claims against Wexford. Rather, Olson claims the decision did not become final until the arbitration panel delivered its decision to deny his motion for leave to file a second amended statement of claim on July 29, 2002. Olson advances four reasons why the dismissal order was not final until that date. The arguments lack merit.

Olson first claims the **[*6]** dismissal order was not final because it was silent as to whether the dismissal was with prejudice and stated "this order shall remain in effect unless amended by the Panel." Response at 3, citing Compl. at Ex. 22. *HN3*An involuntary dismissal is with prejudice unless the order specifies otherwise. See *Paganis v. Blonstein, 3 F.3d 1067, 1071 (7th Cir. 1993)* ("Unless the judgment provides otherwise, involuntary dismissal, including a dismissal for failure to state a claim under Rule 12(b)(6), is an adjudication on the merits -- in other words, a dismissal with prejudice"). The additional language in the order does not change this result. The possibility of a later amendment to a dismissal order does not affect its finality for purposes of appeal. See, e.g, *Bell v. Eastman Kodak Co., 214 F.3d 798, 800 (7th Cir. 2000)*(A Rule 60(b) motion does not toll the time for filing an appeal). See also *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers, Dist. No. 8, 802 F.2d 247, 250 (7th Cir. 1986)*(motion to vacate arbitration award is analogous to an appeal). Contrary to Olson's position, nothing on the face of the **[*7]** dismissal order indicates it was not a final order.

Olson next argues the dismissal order was not final because it did not meet the prerequisites for a final decision in a NASD arbitration. Specifically, Olson claims the dismissal order is not signed by a majority of the arbitrators. Response at 4-5, citing *HN4*NASD Rule 10330 ("All awards shall be in writing and signed by a majority of the arbitrators or in such manner as is required by applicable law"). Olson's argument champions form over substance. As an initial matter, the order is signed by the arbitration chairperson "on behalf of the Panel." Compl. at Ex. 22. Moreover, *HN5*"courts go beyond a document's [form] and delve into its substance and impact to determine whether the decision is final." *Publicis Communication v. True North Communications Inc., 206 F.3d 725, 729 (7th Cir. 2000)*. The dismissal order states, "the Panel finds in favor of Respondent Wexford: Wexford is hereby Dismissed from this arbitration." Compl. at Ex. 22. *HN6*"If the arbitrator himself thinks he's through with the case, then his award is final and appealable." *Smart v. International Brotherhood of Electrical Workers, Local 702, 2002 U.S. App. LEXIS 23733, 315 F.3d 721, 2002 WL 31545466, at *3 (7th Cir. Nov. 15, 2002)*. **[*8]** The dismissal order unambiguously resolves the arbitration in favor of Wexford. Therefore, the dismissal order is final.

Nevertheless, Olson argues the dismissal order was not final because claims against other parties remained undecided. Response at 5-6, citing Fed. R. Civ. P. 54(b). According to Olson, "to make [the dismissal order final] for purposes of the limitations period of Section 12 of the FAA, is to require Olson, or any other party in arbitration confronted with an ambiguous dismissal order, to guess at what is final or not." Response at 6. As an initial matter, *HN7*the Seventh Circuit has "expressed skepticism about the propriety of engrafting Fed. R. Civ. P. 54(b) onto the arbitration statute. . ." *Smart, 2002 U.S. App. LEXIS 23733, 2002 WL 31545466, at *3*, citing *IDS Life Ins. Co. v. Royal Alliance Associates, Inc., 266 F.3d 645, 650 (7th Cir. 2001)*. Indeed, "some cases deem an arbitral award final if it finally resolves a separate claim, or the liability of a particular party, even if other claims or other parties remain before the arbitrators." *IDS Life, 266 F.3d at 650*, citing *Publicis, 206 F.3d at 729*; **[*9]** *Hart Surgical Inc. v. Ultracision, Inc., 244 F.3d 231, 233-34 (1st Cir. 2001)*.

Nevertheless, Olson was not required to guess whether the dismissal order was final for purposes of the limitations period. *HN8*Under the FAA, the court may vacate an arbitrator's award "where the arbitrators . . . so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Alternatively, the court may send an ambiguous decision back to the arbitrators for clarification. *Publicis, 206 F.3d at 730*. Under the FAA, Olson was required to present any question regarding the dismissal order's finality within the 90 day limitations period. He failed to do so.

Get a Document by Citation 2002 U.S. Dist. LEXIS 24988     Page 7 of 8     Page 6 of 7

Case 1:08-cv-02299     Document X-9     Filed 05/05/2008

Finally, Olson argues the arbitrators' decision to deny, rather than strike, his motion to amend his statement of claim establishes the dismissal order was not final. Olson fails to cite any supporting authority. Indeed, [HN9] even district judges retain discretion to treat a post-judgment motion for leave to amend as a simultaneous request for relief from judgment. _Camp v. Gregory, 67 F.3d 1286, 1289-90 (7th Cir. 1995)._ **[*10]** In any event, Olson's post-award motion did not toll the time for filing a petition to vacate the award. _Dreis & Krump, 802 F.2d 247, 250._ Therefore, Olson's petition to vacate is untimely.

## III. Wexford's Motion to Confirm Arbitration Award

[HN10] Under the FAA, the district court must grant a timely motion to confirm an arbitration award unless the award has been vacated, modified or corrected. _International Union of Operating Engineers, Local No. 841 v. Murphy Company, 82 F.3d 185, 188 (7th Cir. 1996)._ Wexford's motion was filed within the one year limitation period for confirmation. _9 U.S.C. § 9._ Moreover, Olson failed to successfully challenge the arbitration award within the requisite 90 day limitation period. _See Lander Co., Inc. v. MMP Investments, Inc., 107 F.3d 476, 478 (7th Cir. 1997)_(right to contest confirmation is forfeited by failing to file motion to vacate within 90 day period). As a result, the arbitration award in favor of Wexford must be confirmed.

## CONCLUSION

Olson's petition to vacate the arbitration dismissal is untimely. Therefore, Wexford's motion for judgment on the pleadings is **[*11]** granted. Wexford's alternative motion to dismiss for failure to state a cause of action is moot. The arbitration award in favor of Wexford is confirmed.

December 31, 2002

ENTER:

Suzanne B. Conlon

United States District Judge

## JUDGMENT IN A CIVIL CASE

Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Judgment is entered in favor of respondent Wexford Clearing Services Corporation and against petitioner Lawrence W. Olson, individually and as trustee of the Lawrence W. Olson Charitable Remainder Trust dated 11/01/92. The April 15, 2002 arbitration award in favor of Wexford Clearing Services Corporation and against Lawrence W. Olson, individually and as trustee of the Lawrence W. Olson Charitable Remainder Trust dated 11/01/92, in NASD arbitration proceeding No. 98-02762 is confirmed.

Date: 12/31/2002

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 24988**
View: Full
Date/Time: Friday, May 2, 2008 - 10:26 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs

⚠ - Caution: Possible negative treatment
✦ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

 LexisNexis®

About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.