UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS R. METTER, | ) | |
| | ) | |
| Applicant, | ) | |
| | ) | |
| Vs. | ) | Case No.:  08 CV  2239 |
| | ) | |
| WACHOVIA SECURITIES, LLC, | ) | Judge: John W. Darrah |
| | ) | |
| Respondent. | ) | Magistrate: Judge Nan R. Nolan |

**MEMORANDUM IN SUPPORT OF MOTION TO VACATE**

Applicant, DENNIS R. METTER, by and through his attorney, James J. Macchitelli, provides the following as a Memorandum in Support of his Motion to Vacate the award of the arbitrators that was entered on December 20, 2007, and in support thereof states as follows:

**I.   INTRODUCTION**

1. Plaintiff, DENNIS R. METTER, brings this Motion to Vacate and thus asks this Court to vacate the award of the arbitrators that was issued on December 20, 2007 in favor of Wachovia Securities, L.LC., and against Dennis R. Metter in the amount of $248,574.15..

**II.   FACTS**

2. Dennis Metter is and, at all time relevant, was, a registered securities broker engaged in the business of providing financial advice to clients and as in this case advising large institutional pension fund clients.

3. Prior to September of 20000, Dennis Metter met with a regional manager of First Union Securities (hereafter "First Union") and the regional manager advised that First Union wanted to establish a presence in the Chicago area in the institutional securities market.

4.     In September of 2000, Dennis Metter entered a written employment agreement with First Union and he commenced employment with First Union as a Senior Vice-President in its Lombard office.  At time of employment, Dennis Metter was provided with a $672,656.00 advancement that took the form of a six year forgivable loan to be forgiven on a monthly basis.  Plus Dennis Metter was to earn commissions on the business that he brought and bonuses based on production.  Commission and bonuses will be discussed subsequent.

5.     In addition, Dennis Metter made it very clear that his acceptance of an employment position with First Union was contingent upon his being allowed to collect a monthly salary of $12,500.00 that resulted in $150,000 yearly salary from an entity known as Freedom Capital.  First Union approved this and the Freedom Capital salary was to be paid by Freedom Capital through First Union.

6.     By December of 2000, Dennis Metter successfully arranged a meeting with trustees of the Cook County Retirement Pension Fund or Cook County Annuity Fund.  Once there was an approval from the trustees, Dennis Metter was put in touch with the pension fund consultants and he was able to suggest an investment strategy.

7.     On July 9, 2001, Dennis Metter closed a $50 Million investment from the Retirement Board of the Cook County Employee, and Officers' Annuity and Benefit Fund of Cook County.  And, four months later, Dennis Metter closed on a deal for $25 Million more.  These multi-million dollar investments take time to achieve.

8.     It very important to note that First Union was very, very receptive to Dennis Metter and it in good faith supported Dennis Metter in his attempts to develop business and achieve success in offering a new investment product with no track record.

9. Dennis Metter's accomplishments with Retirement Board of Cook County Employee, and Officers' Annuity and Benefit Fund of Cook County is a type business that is not transportable. Dennis Metter brought this tremendous amount of funds from Cook County to Wachovia and the funds would stay with Wachovia through Evergreen Investments because the trustees of the Cook County Fund have an obligation to the fund to keep investment managers for a long, long time if they are doing well and the investments are earning good returns.

10. And, Dennis Metter had real support from everyone at First Union in an effort to accomplish this business with Cook County. However, after the investments were made, this cooperation ceased. Maybe it was because First Union merged with another entity and this new entity became known as Wachovia Securities, LLC (hereafter "Wachovia"). First Union had changed and now become known as Wachovia Securities, LLC. The name was different and the people making decisions were different.

11. In November of 2004, Freedom Capital asked Wachovia f/k/a First Union to reaffirm the agreement to pay Dennis Metter $150,000 annually through Wachovia. This reaffirmation was sent to Keith Vanderveen, Regional President of the Mid-West Region for Wachovia. This reaffirmation agreement bounced around Wachovia and no one would approve it. This issue remained for some time as undecided.

13. At or near the beginning of 2005, Wachovia's Regulatory and Financial Service Compliance group reviewed the investments at issue in this case and the compliance group concluded that the trail or commission earned by Wachovia on the type investment established by Dennis Metter with trustees of Cook County was more like 1% in the industry rather than 2% - 4% as was being earned or charged by Wachovia. So, in March of 2005, Wachovia unilaterally reduced Dennis Metter's commissions by 50%.

14. Then, the Director of Regulatory and Financial Service Compliance at Wachovia, Lawrence P. Sander, reviewed the Freedom Capital issue and by July of 2005, Mr. Sander recommended to Keith Vanderveen, Mid-West Regional President, Wachovia, that the agreement with Freedom Capital for Dennis Metter not be reaffirmed. By this decision, Dennis Metter lost $150,000.00 per year salary from Freedom Capital.

15. On September 2, 2005, Dennis Metter advised Wachovia in writing that he believed that he was constructively discharged and therefore Dennis Metter's employment relationship was terminated.

16. Dennis Metter retained counsel and a Claim was filed with NASD (n/k/a "FINRA") which alleged that Dennis Metter was entitled to damages in excess of $1 million for Respondent's actions. Dennis Metter's claim was based on (1) constructive termination; (2) breach of agreement; (3) unjust enrichment; and (4) fraud and misrepresentation.

17. Wachovia filed an answer, affirmative defenses which claimed (1) Dennis Metter was an employee at-will; Dennis Metter's damages are speculative; and (3) Dennis Mettter voluntarily resigned. In addition, Wachovia filed a counter-claim that alleged that Dennis Metter breached the promissory note.

18. On December 11, 2008, a four day arbitration hearing started at the Financial Industry Regulatory Authority (hereafter "FINRA") at 55 West Monroe, Chicago, Illinois. The arbitration hearing was had before three arbitrators: (1) Victor Elting, Chairman, (2) Jeff Durkes and (3) Tom Ryan. The Claimant was represented by Gregory Friedman and Paula Maguire from the Law Offices of Friedman & Holtz. The Respondent was represented by Derek Anderson and Pete Michaels from the Law Offices of Michael Roy & Rabinovitz. Numerous witnesses were called and each testified and was cross-examined

19. On December 20, 2007, the arbitrators returned an award and denied and dismissed with prejudice Dennis Metter's claims. Further the arbitrators returned an award in favor of Wachovia and against Dennis Metter on its counterclaim and awarded $248,574.15 in damages plus 7% interest.

20. Dennis Metter asks this court to Vacate the arbitration award and enter judgment in his favor as this award shows arbitrator partiality and manifest disregard of the law. Claimant withdraws his claims that were made in his original filing and thus specifically withdraws the claim that the award is void in Count I and that there arbitration was an improper forum as alleged in Count II. The remaining allegation alleged to vacate the award was that the award is invalid because there was evident partiality by the arbitrators toward Wachovia.

### III.   RULES OF LAW

21. The grounds on which an arbitrator's award may be challenged are usually limited to arbitrator partiality or misconduct; prejudicial conduct of hearing; imperfections, ambiguities, or mistakes on the face of the award; corruption or fraud by the arbitrator; unreasonable refusal to hear evidence or postpone the hearing and manifest disregard of the law. See, FINRA, Arbitration and Mediation, Post-Award Procedure. Partial means favoring one side in a dispute above the other, and biased.

#### a. Constructive Discharge / Termination

22. Constructive discharge occurs when an employee's working conditions are made so intolerable by the employer that the employee, acting as a reasonable person, is compelled to resign. ( *Steele v. Illinois Human Rights Comm'n* (3d Dist. 1987), 160 Ill. App. 3d 577, 581, 513 N.E.2d 1177, 1179-80.)

23. The focus in a constructive discharge case is whether a reasonable person in plaintiff's position would feel compelled to leave her job. In the course of most, if not all, people's employment, a wide variety of disappointments, and possibly some inJustices, occur. Most of these are normal incidents of employment that would not lead a reasonable person to quit. An employee may not be unreasonably sensitive to his or her working environment. ( *Phaup v. Pepsi Cola General Bottlers, Inc.* (N.D. Ill. 1991), 761 F. Supp. 555, 570.)

24. There are no magic words required to discharge an employee: an employer cannot escape responsibility for an improper discharge simply because it never uttered the words "you're fired." So long as the employer's message that the employee has been involuntarily terminated is clearly and unequivocally communicated to the employee, there has been an actual discharge, regardless of the form such discharge takes. *Hinthorn, v. Roland's of Bloomington* (1988) 119 Ill. 2d 526.

### b. Breach of Contract

25. To state a cause of action for breach of contract, a plaintiff must allege the existence of a contract, performance of all conditions to be performed by the plaintiff, breach by the defendant, and damages to plaintiff as a consequence thereof. *Sutherland v. Illinois Bell* (1st Dist. 1993) 254 Ill. App. 3d 983, 993, 627 N.E.2d 145; *Berg & Associates, Inc. v. Nelsen Steel & Wire Co.* (1st Dist. 1991) 221 Ill. App. 3d 526, 534, 580 N.E.2d 1198; *Perlman v. Westin Hotel Co*. (1st Dist. 1987) 154 Ill. App. 3d 346, 353, 506 N.E.2d 1318.

### c. Unjust Enrichment

26. An action for money had and received is maintainable where defendant has received money which in equity and good conscience belongs to the plaintiff. *Drury v. County of McLean* (1982) 89 Ill. 2d 417, 425-426, 433 N.E.2d 666, 670; *Cohon v. Oscar L. Paris Co.* (1st

Dist.1958) 17 Ill. App. 2d 21, 26, 149 N.E.2d 472, 475.

27. A plaintiff may recover under the theory of unjust enrichment if the defendant unjustly retained a benefit to plaintiff's detriment, and "defendant's retention of the benefit violates the fundamental principals of justice, equity and good conscience." *Alliance Acceptance Co. v. Yale Insurance Agency* (1st Dist. 1995) 271 Ill. App. 3d 483, 492, 648 N.E.2d 971, quoting *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989) 131 Ill. 2d 145, 160.

28. A cause of action based upon unjust enrichment does not require fault or illegality on the part of defendants; the essence of the cause of action is that one party is enriched, and it would be unjust for that party to retain the enrichment. Firemen's Annuity and Benefit Fund of the *City of Chicago v. The Municipal Employees', Officers', and Officials' Annuity and Benefit Fund in Chicago* (1st Dist. 1991) 219 Ill. App. 3d 707, 712, 579 N.E.2d 1003. This principle, however, is based upon an implied contract; where there is a specific contract that governs the relationship of the parties, the doctrine has no application. *People ex rel. Hartigan v. E & E Hauling, Inc.* (1992) 153 Ill. 2d 473, 497, 607 N.E.2d 165.

## ARGUMENTS\

### I. Dennis Metter was constructively discharged.

29. The arbitrators at bar possessed "evident partiality" toward Wachovia. Clearly no person would stay with a job that has arbitrarily and capriciously reduced their commission 50% and further refused to reaffirm a deal whereby the employee was to receive $150,000.0 yearly salary. From the alleged circumstances, Dennis Metter was not being given an actual opportunity to continue his employment at Wachovia. The commissions and salaries of no other employees were reduced and eliminated. The arbitrators arbitrarily and capriciously failed to give the appropriate weight to the evidence.

30. Clearly the arbitrators were biased against Dennis Metter while they were favorable for Wachovia. A review of the transcript provides that under First Union Dennis Metter's employment was more than acceptable. I fact, Dennis Metter's employment was extremely good and conducive to achieving business goals in that he achieve goals for clients and he earned a reasonably good income.

31. When First Union became Wachovia, there were still some of the prior managers and personnel but there were some new and different regional directors and compliance personnel. It seemed that some were jealous that Dennis Metter could be the number 4 or 5 producer in Wachovia with only one client that provided $75 Million for investment.

32. On page 342 of Applicant's transcript, Dean Niewolny (a branch manager for First Union and later Wachovia) said that Dennis Metter was 4th or 5th top person with respect to production. Dean Niewolny testified that and Jason McLaughlin did every thing they could to keep Dennis Metter (Transcript Page 367). Dean Niewolny said that Dennis Metters trail was about $1 ½ Million per year and that he did not want to see it go.

33. It seemed clear that Dean Niewolny's hand were tied. His superiors decided to cut Dennis Metter's commission from 2 points to 1 point and further refused to reaffirm Dennis Metter's $150,000.00 yearly salary from Freedom Capital. Dennis Metter's income was reduced by 60% and there was no good reason to cut his pay. At this time, it was unknown what was next. No rational person or employee could be expected to stay employed with an employer who substantially reduced his or her salary.

34. The arbitrators' finding that Dennis Metter left his position of employment voluntarily is ridiculous and a blatant partiality toward Wachovia by the arbitrators. Because with Dennis Metter out, Dennis Metter's $200,000.00 quarterly commission was to go to the house.

35. By Dennis Metter's discharge, Wachovia profited substantially because there was three more years on the investment that Metter procured and Wachovia would retain the entire quarterly commissions and would benefit more than $1 Million.

## II. Wachovia Breached Dennis Metter's Employment Contract

36. To state a cause of action for breach of contract, a plaintiff must allege:

(1) the existence of a contract;

(2) performance of all conditions to be performed by the plaintiff;

(3) breach by the defendant; and

(4) damages to plaintiff as a consequence thereof.

37. Element number one is satisfied because in September of 2000, Wachovia and Dennis Metter entered a written employment contract or as the document describes, a synopsis of the compensation arrangements in effect during Dennis Metter's employment. Dennis Metter received a forgivable loan and he was earning a reasonable commission and bonuses. Plus, he was receiving a $150,000.00 salary from Freedom Capital through Wachovia. The contract terms were clear and they could be changed or modified without being in writing and executed by Dennis Metter and a duly authorized officer of Wachovia..

38. Element number two is satisfied because Dennis Metter was the number 4 or 5 in production. Dennis Metter obtained $75 Million investment and at the time of his discharge, the $75 Million had grow to $200,000.00 Million.

39. Element number three was fulfilled because throughout 2005, Wachovia failed to act in good faith and it made all kinds of changes that were not in writing and not executed by the parties and these changes were just no rational. These changes were made to anger Dennis Metter and to force him out.

40.     A covenant of good faith and fair dealing is implied in every contract absent a provision that specifically states otherwise. *Dayan v. McDonald's Corp.*(1984) 125 Ill. App. 3d 972, 989. Even though such a covenant may be absent in the contract's express language, courts must compel performance in accordance with good faith and fair dealing. *Kipnis v. Mandel Metals Inc.* (1st Dist. 2000) 741 N.E.2d 1033, 1038.

41.     By lowering Dennis Metter's commissions by 50% and by refusing to reaffirm Dennis Metter's $150,000.00 yearly salary from Freedom Capital, Wachovia acted in bad faith and outright breached Dennis Metter's employment agreement or the written synopsis of his compensation.  And Wachovia did this to keep 100% of the quarterly commissions in an amount of more than $1 Million.

42.     The arbitrators' award was partial toward Wachovia and it must be vacated and an award must be entered in favor of Dennis Metter in an amount of at least $1,450,000.00 to compensate him for his lost quarterly commissions and his Freedom Capital salary.

### III.     Alternatively, Dennis Metter is entitled to compensation under theory of unjust enrichment

43.     There is no rule of law which precludes a party from recovering under the theory of unjust enrichment as to one transaction, and recovering under a breach of contract theory as to another transaction..

44.     An action for money had and received is maintainable where defendant has received money which in equity and good conscience belongs to the plaintiff.  Wachovia kept Dennis Metter's quarterly commissions.  These quarterly commissions belong to Dennis Metter because Dennis Metter fully performed and obtained these investments.  Dennis Metter fully performed and Wachovia arbitrarily took what belonged to Dennis Metter.

45. All in all, Wachovia should not be allowed to keep the quarterly commissions of Dennis Matter. To allow Dennis to loose all this income and to force him to repay $250,000.00 to Wachovia is outright unethical. Wachovia should not be allowed to benefit from its wrongful conduct. The quarterly commissions in this case that belonged to Dennis Mettter were more than $1 Million.

WHEREFORE, Applicant, DENNIS METTER, prays that this court vacates the award that was entered in favor of Wachovia and against him and further enters an award in his favor and against Wachovia in the amount of $1,450,000.00.

Respectfully submitted,

/s/ James J. Macchitelli

Attorney Number: 6208773
James J. Macchitelli
Attorney for Dennis Metter
7247 West Touhy Avenue
Chicago, Illinois 60631
773-631-1500